## THE STATE v. O. W. CARTER, Appellant.

Division Two, June 23, 1914.

1. **WITNESS: Impeachment: Contradictory Statements: Equivocation.** A witness cannot avoid contradicting by equivocating, nor is the opposite party to be deprived of the right to show that the witness has made contradictory statements either by his feigned or real forgetfulness. Nothing but an admission that he made the very statement alleged, will deprive the opposite party of the right to prove it.

2. **CARRYING CONCEALED WEAPONS: Intent: Sec. 4496, R. S. 1909.** Even though one should carry a revolver concealed

State v. Carter.

upon his person, he would not be guilty of an offense under Sec. 4496, R. S. 1909, unless he *intended* to do the act which the statute prohibits, to-wit, carry the weapon concealed.

3. ———: ———: ———: **Question for Jury: Instructions.**
Where in a prosecution under Sec. 4496, R. S. 1909, for carrying concealed weapons, a contested issue of fact is involved both as to the concealment of the weapon, and, if it was concealed, as to whether or not the defendant intended it to be concealed, the question of defendant's intent in that regard is for the jury under a proper instruction.

4. ———: **Sec. 4496, R. S. 1909: Defenses: Threatened Bodily Harm.** In a prosecution under Sec. 4496, R. S. 1909, for carrying concealed weapons, evidence is not admissible that the defendant had been threatened with great bodily harm or had good reason to carry the weapon in the necessary defense of his person. Those defenses are not available under the statute in question.

Appeal from Moniteau Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED.

*S. C. Gill* and *A. T. Dumm* for appellant.

(1) The court erred in refusing to permit appellant to impeach the witness, Rymel, by proof of contradictory statements made by the witness on the vital question in the case. Peck v. Ritchey, 66 Mo. 119; Sullivan v. Railroad, 133 Mo. 5; Mahaney v. Railroad, 108 Mo. 200; Spohn v. Railroad, 122 Mo. 17; State v. Baker, 136 Mo. 83; Garrett v. Transit Co., 219 Mo. 93; 30 Am. & Eng. Ency. Law (2 Ed.), 1111, 1112, and cases cited; 40 Cyc. 2737. The proper foundation was laid for the impeachment, and the equivocal answer of the witness sought to be impeached did not deprive appellant of the right to prove contradictory statements made by the witness. (2) The court erred in refusing instruction D, requested by appellant, which covered the question of appellant's intent to carry the weapon concealed. State v. Murray, 39 Mo. App.

129; State v. Roberts, 39 Mo. App. 48; State v. Larkin, 24 Mo. App. 410; State v. Partlow, 90 Mo. 626; State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. 573; Nichols v. Winfrey, 79 Mo. 546; State v. Tate, 12 Mo. App. 327; State v. Murphy, 14 Mo. App. 73. (3) Instruction 4, given for the State, does not properly declare the law, and is unfair and prejudicial to the appellant. The giving of this instruction and the refusal of instruction D, requested by appellant, was, in substance and practical effect, a direction to the jury to find appellant guilty, though the weapon might have been concealed for an infinitesimal period of time, and without regard to the intent of appellant in having the weapon upon his person, and regardless of his intention not to carry it concealed. 5 Am. & Eng. Ency. Law (2 Ed.), p. 734; Page v. State, 3 Heisk. (Tenn.) 198; Owen v. State, 31 Ala. 387; Lann v. State, 25 Tex. App. 495; Waddell v. State, 37 Tex. 354; State v. Larkin, 24 Mo. App. 410. (4) The court erred in refusing to permit appellant to prove that immediately before he procured the pistol his life had been threatened and he had been assaulted, and that he believed and had good reason to believe that he was in great personal danger, and that he was carrying the weapon in his own defense; and the court further erred in refusing instruction F, requested by appellant, which told the jury that if they found that appellant had been threatened with great bodily harm, or had good reason to believe that it was necessary for him to carry the weapon in defense of his person, they would find him not guilty.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) Under point 1 of the appellant's brief a number of cases are cited to the effect that the party proposing to impeach a witness cannot be deprived of

this right by an equivocal answer of the witness or his failure to remember what he testified to before. We are not disposed to contend that this is not the law of this State. The particular questions and answers sought to be impeached by the appellant are as follows: "Q. Didn't you testify at the preliminary hearing in this case that when you were on the right side of Mr. Carter you could see that pistol in his pocket? A. I never testified I was on the right side, I don't think. Q. You don't think you did? A. If I did I don't remember." The court will notice that this question does not call for any particular time or place when the defendant was on the right side of Mr. Carter. It is not laid at any time from the moment defendant left his store until he was stopped by Rymel and Bardwell. While it is true that the above question and answer, in connection with the questions and answers immediately preceding, would tend to fix the time and place rather indefinitely before the appellant was stopped by Rymel and Bardwell, yet the crime of carrying concealed weapons can be committed by carrying a concealed weapon for a small space of time. Therefore, whether Rymel had seen the revolver in the appellant's pocket or not would be immaterial. Kelley's Crim. Law & Procedure (3 Ed.), sec. 385; State v. Parker, 96 Mo. 993; State v. Grant, 79 Mo. 132. Again, the offer of proof by the appellant is indefinite as to time, and is in words and figures as follows: "Mr. Dumm: We offer to show by this witness that he was present at the preliminary hearing of the defendant, O. W. Carter, at Tipton, Mo., on the 23rd day of July, 1912; that at the preliminary hearing Willie Rymel was sworn as a witness, and he testified that he was on the right side of the defendant, and he saw the pistol in his pocket." The same offer of proof is (again) renewed on pages 88 and 89 of the transcript and both of these instances are indefinite as to time and place. We believe that, while there must be an

unequivocal admission in order to refuse an impeach-
ment of a witness, in the case at bar the offer of proof,
being indefinite as to time and place, did not in any
way tend to impeach the testimony of the witness, Ry-
mel. If the court should be of the opinion that the
offer as made would impeach the witness, Rymel, it
must be remembered that the extent of impeaching
testimony rests largely within the discretion of the
court. 40 Cyc. 2741; Car Works Co. v. Copper, 75
Ark. 325. (2) We do not believe that instruction D
declares the law under section 4496. The cases cited
by the appellant are all cases arising under Secs. 1862
and 1863, R. S. 1899. The exception under Sec. 4496,
R. S. 1909, is materially different. In the exceptions
under section 4496 the following words are omitted
which were included under section 1863, Revised Stat-
utes 1899: "And it shall be a good defense to the
charge of carrying such weapon if the court shall show
he has been threatened with great bodily harm or had
good reason to carry the same in the necessary defense
of his person." In the appellant's brief the case of
State v. Hovis, 135 Mo. App. 544, is omitted. This
case mentions some of the cases cited by the appellant
and states that when the intent to carry a deadly
weapon concealed about the person exists and the act
is not within one of the exceptions of Sec. 1863, R. S.
1899, the defendant is guilty and it is immaterial that
his ulterior purpose or motive in carrying the weapon
is innocent and harmless. (3) Under Sec. 4496, R. S.
1909, the facts stated in the appellant's instruction
F are not a defense, there being no exception, under
said section, which includes the same. Appellant's
instruction F would have been a good instruction un-
der Sec. 1863, R. S. 1899, but the Legislature evidently
had this very matter of defense in mind when it en-
acted Sec. 4496, R. S. 1909, and omitted to state that
it would be a good defense to the charge of carrying

such weapon "if the defendant shall show that he has been threatened with great bodily harm or had good reason to carry the same in the necessary defense of his person, home or property." The appellant has failed to distinguish between Sec. 4496, R. S. 1909, and Secs. 1862 and 1863, R. S. 1899.

WILLIAMS, C.—On January 12, 1914, in the circuit court of Moniteau county, defendant was convicted of the crime of carrying concealed about his person a deadly weapon, to-wit, a revolving pistol. His punishment was assessed at a fine of one hundred dollars. Defendant appealed.

The State's evidence tends to establish the following facts: The crime occurred on one of the principal streets of the town of Fortuna, Moniteau county, Missouri, on July 21, 1913. On that date, defendant, the owner and operator of a store at that place, came out of his store, carrying a revolver in his right hand. He did not have on a coat or vest. On reaching the street, in front of his store, he put the revolver into the right side pocket of his overalls and placed his hand partly into said pocket so that the pocket and hand concealed the revolver. He then started down the middle of the public street (the evidence does not show upon what mission he was bound). Just after he left his place of business, his son Virgil Carter and another boy named Willie Rymel caught up with him and endeavored to force him back to his store, but were unable to do so and the three proceeded westward down the street, the defendant pushing the two boys away with his left hand and keeping his right hand in his right side pocket.

After proceeding down the street a distance of about a block and a half, a Mr. Bardwell came to the assistance of the two boys and he, together with the two boys, forcibly lifted defendant off the ground and started to carry him back to his store. At this junc-

ture, one of the party took the revolver from defendant's pocket and delivered it to Mr. Bardwell.

. Five or six witnesses testified, for the State, that at the time of the occurrence, they were standing at different places along the street, in front of different stores, and that they saw defendant and the two boys going down the street but did not see any revolver on the person of the defendant. Some of these witnesses were standing in a position to the left of defendant as he went down the street but others of them were on the right side of the street.

The Rymel boy testified for the State that he had a hold on the defendant the greater portion of the time as they went down the street. This witness further testified that from the time that he caught up with defendant until the time defendant was stopped he could not see the pistol on defendant but that after defendant was stopped and when they started to carry him back to his store he saw the handle and part of the cylinder of the revolver sticking out of defendant's right hand pocket. On the cross-examination of this witness, and for the purpose of laying a foundation for his impeachment, he was asked if he did not testify at the preliminary hearing that when he was on the right side of defendant, as they were going down the street, he could see the pistol in defendant's pocket. In answer to this question he said that if he did so testify he didn't remember it. Later defendant offered to prove by witnesses R. L. Hagen, Fred Krone, a lawyer, and A. M. Park, deputy sheriff, that they were present at the preliminary hearing and heard witness Rymel there testify that when he was on the right side of the defendant he saw the pistol in defendant's right hand pocket. The court refused to admit this evidence and defendant excepted.

The evidence on the part of defendant was substantially as follows: Lee Huff and his son Floyd testified that all the time defendant was coming down

the street, he was using both hands trying to push the boys away from him and as he passed the place where they were standing they could see the pistol handle sticking out of defendant's right hand pocket. Virgil Carter, son of defendant, testified that he was on the right side of his father as they went down the street and as they started down the street he saw a portion of the pistol sticking out of his father's right hand pocket; that after they started down the street he did not look at his father's pocket any more until they reached the place where defendant was finally stopped; that he was somewhat excited during this time and his attention was occupied trying to get his father back to the store; that when he did again look at the pocket in which the pistol was contained, after defendant was finally stopped, the pistol was in the same position that it was in when defendant started down the street and that a portion of the pistol stuck out of the pocket and was visible. Two or three other witnesses for the defendant testified that defendant did not have his right hand in his pocket but was using his right hand pushing the boys away from him. Two of these witnesses were standing on the right hand edge of the street but did not notice the revolver in defendant's pocket. Defendant testified in his own behalf that he had the pistol in his right hand overalls pocket as he went down the street but that the pistol was not concealed at any time and that a portion of the pistol stuck out of his overalls pocket about three or three and one-half inches and that the pocket was not sufficiently large to conceal the pistol; that he did not conceal the upper part of the pistol by putting his right hand in his pocket or over the pistol but that both of the boys were clinging to him as they were going down the street and that he was using both hands pushing the boys in front of him. He further testified that he did not intend to carry the pistol concealed at any time. Defendant further offered to prove that on the

State v. Carter.

same day and a short time prior to placing the pistol in his pocket, he had been assaulted and his life had been threatened and he thought he was in great personal danger and he was carrying the weapon in defense of his life. This testimony was excluded by the court and defendant saved an exception.

The defendant offered in evidence the overalls which he wore on the day in question and also the pistol which he had in his pocket and upon his request he was permitted to put on the overalls and to put the pistol in the right hand pocket thereof and to walk before the jury so that the jury could see the way and manner in which the defendant claimed he carried the gun on the day in question. He testified that the overalls had not been changed in any manner and that the pockets were the same as upon the day in question.

I. It is urged that the court erred in excluding the testimony offered by defendant to impeach the witness Rymel. This witness, by reason

Impeachment of Witness: Contradictory Statements: Equivocation.

of being in close proximity to defendant during the time the weapon is claimed to have been concealed, was an important witness for the State. As defendant went down the street, this witness and defendant's son attempted to stop him and cause him to return to the store. Rymel testified that he did not see the revolver from the time defendant started down the street until he was finally stopped. From his testimony, it clearly appears that a portion of that time, at least, he was in a position to have seen the revolver if it was not concealed, thereby clearly leaving the inference that the revolver was concealed at that time. For the purpose of laying a foundation for the impeachment of the witness, he was asked whether or not, at the preliminary hearing in the case, he testified that he saw the pistol in defendant's pocket after defendant

State v. Carter.

left the store and before he was stopped. He answered that he did not think he did so testify. Upon being further asked if he did not testify, at the preliminary hearing, that when he was on the right side of defendant he could see the pistol, he replied that, if he did, he didn't remember it. Later the defendant offered to prove by three witnesses, who were present and heard the witness testify at the preliminary hearing, that he did so testify. The State objected to the introduction of this testimony on the ground that since the witness had not denied that he had so testified, but merely said he did not remember, no proper foundation had been laid for the impeachment of the witness. The court sustained the objection and refused defendant's offer of proof and defendant saved an exception. The court erred in excluding this evidence. In the case of Peck v. Ritchey, 66 Mo. 114, l. c. 119-120, this court, speaking through HENRY, J., correctly announced the rule here applicable, as follows: "A witness cannot avoid contradicting by equivocating, nor is the opposite party to be deprived of the right to show that the witness has made contradictory statements either by his feigned or real forgetfulness. Nothing but an admission that he made the very statement alleged, will deprive the opposite party of the right to prove it." To the same effect are Sullivan v. The Jefferson Avenue Ry. Co., 133 Mo. 1, and 40 Cyc. 2737-2738.

II. It is further contended that the court erred in refusing defendant's instruction D. Said instruction was as follows:

Carrying Concealed Weapons: Intent.

"To conceal a weapon means something more than carrying it or the mere fact of having it where it may not be seen; it implies an assent of the mind and a purpose to carry it so that it may not be seen."

This was a prosecution under section 4496, Revised Statutes 1909, which constitutes it a felony for any person (other than persons therein excepted) to "carry concealed upon or about his person a dangerous or deadly weapon," etc. Defendant does not come within any of the exceptions enumerated in the statute. Such being true, the motive or purpose with which defendant carried the revolver concealed would be no defense and should not be considered in arriving at the guilt or innocence of the defendant. But while that is true, yet defendant, even though he carried the revolver concealed, would not be guilty of an offense under the Statute unless he *intended* to do the act which the statute prohibits, to-wit, carry the weapon concealed. [Bishop on Statutory Crimes, sec. 789; State v. Hovis, 135 Mo. App. 544; 5 Am. & Eng. Ency. Law (2 Ed.), p. 734.]

The sole issue of fact in this case was with reference to the concealment of the instrument. The State's evidence tended to show that as defendant walked down the street the revolver was concealed partly in the pocket and partly by his right hand. Defendant's evidence tended to show that it was not concealed but that a portion of it protruded above the pocket and that defendant did not intend to conceal the same and that he was using his right hand to free himself from the two boys as the three were progressing down the street. The circumstances detailed in evidence gave some corroboration to defendant's claim. Where the State's evidence shows that the weapon is concealed, it would no doubt be a sufficient prima-facie showing that he intended to conceal the same, because from such proof it might well be inferred or presumed that the person *intended* to do that which in fact he did do, and when this is true and this issue is not controverted, it becomes of little importance in the case. But where, as here, a contested issue of fact is in-

**Instructions.** volved, both as to the concealment and, if concealed, as to whether or not the defendant intended it to be concealed, the question of defendant's intent in that regard becomes an important issue of fact in the case, to be determined by the jury. The instruction requested by defendant contains a correct declaration of law but we think this issue could be more clearly put to the jury if they were, in effect, instructed that if they find and believe from the evidence that defendant did not intend to carry the weapon concealed then they should acquit the defendant. Or the point might be properly presented to the jury by inserting the words "intentionally" or other words of like import, at the proper place in the main instruction given on behalf of the State. The court in the present case should have instructed the jury on the above point.

III. The court did not err in refusing to allow the defendant to prove that he had been threatened **Defenses:** with great bodily harm or had good rea- **Sec. 4496,** son to carry the weapon in the necessary de- **R. S. 1909.** fense of his person. The above were proper defenses under section 1863, Revised Statutes 1899. But that section was repealed in 1909 and a new section (Sec. 4496, R. S. 1909) was enacted in lieu thereof. [Laws 1909, p. 452.]

Those defenses are not available to the defendant charged with carrying concealed weapons under the new act.

The judgment is reversed and the cause is remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. *Walker, P. J.,* and *Brown, J.,* concur; *Faris, J.,* concurs in paragraph I and in the result.