**STATE of Missouri, Respondent,**

**v.**

**Mitchell V. CRONE, Appellant.**

**No. 51313.**

Supreme Court of Missouri, Division No. 1.

Feb. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Charles D. Matthews, Sp. Asst. Atty. Gen., Sikeston, for respondent.

Charles Shaw and L. L. Bornschein, Clayton, for appellant.

HYDE, Presiding Judge.

Defendant, charged under the habitual criminal statute, was found guilty of carrying a concealed and dangerous weapon upon his person. Secs. 556.280 and 564.610; statutory references are to RSMo and V.A.M.S. Defendant was found guilty by the jury and sentenced by the court to imprisonment for two years and has appealed. No brief has been filed here so we consider all assignments in his motion for new trial in accordance with Criminal Rule 27.20. (See also Rule 28.02, V.A.M.R.)

Two issues are presented by defendant's motion, namely, his claim that his motion for acquittal at the close of all the evidence should have been sustained; and his claim of prejudicial error in permitting the prosecuting attorney to cross-examine and impeach the State's witness, William Heath.

Our view is that the testimony of the State's witnesses (defendant offered none) was sufficient to sustain a finding that defendant had a revolver concealed about his person on the occasion involved. A tavern employee, Sue Perry, testified that defendant and his brother Dick had been in the tavern earlier and Dick had the gun. She told him "he couldn't have it in there so he walked out and put it in his car." Defendant came back about 2:00 P.M. with his brother and Bill Heath, got into an argument with Benny Thompson, drew a gun and said he would shoot him. Although she said she first saw the gun in defendant's hand, she testified: "Q Where was the gun at the time he drew it? A Well, it was down in his pants. Q Was any portion of the gun visible at the time it was drawn or just before it was drawn? A Not before it was drawn. (She said it was drawn from his left side.) * * * (On cross-examination) Q Now, actually, Sue, you didn't see Mitchell Crone take a pistol out of his belt, did you? A No. (On re-

direct) Q Did you notice Mitchell (defendant) as he was standing in the 21 Club shortly after he had come back? A Yes. Q Was there a bulge of any sort around Mitchell Crone's belt? A I saw a bulge as he came in. Q Had that bulge been in there prior to his leaving at around one o'clock? A No. (On further cross-examination) Q All right. Now, you at no time saw a gun sticking out of his belt or out from under his T-shirt or anything else, did you? A There was something sticking under his T-shirt." (Parenthetical inserts ours.)

Benny Thompson joined defendant and his companions at a table where they were all seated. He said defendant started arguing with him; "about this time my father and brother arrived, so I turned and started talking to my brother, and I happened to glance back over at Mitchell and he was fumbling in his belt, and all of a sudden he come up with the gun and he pointed it down at my chest just about this position (indicating) across the table from me. He told me, he says, 'I am going to kill you with that,' * * *. Q (By Mr. Matthews) From where had he extracted the gun or pulled the gun? A From under his belt or under his pants somewhere. * * * Q (By Mr. Matthews) Were you able to see the gun or were you able to see the waist of Mr. Crone prior to the time he pulled the gun? A No, I was not. * * * Q And then the next thing you know you saw this gun and it was above the table? A It was above the table in his hand, yes." A Sikeston police officer found defendant lying on his back unconscious outside the tavern after 3:00 P.M. and "could see a gun down in his belt." (Defendant had been "knocked out" by Heath who said he did it to keep defendant out of trouble.) The officer, testifying without objection, said: "He had on an undershirt, T-shirt, and it was just off of it where I could see under his belt." He took the gun (a thirty-eight Smith and Wesson) and kept it until he produced it at the trial.

In State v. Bordeaux, Mo.Sup., 337 S.W.2d 47, 49, we said, citing Missouri cases and Annotation, 43 A.L.R.2d 492, 510, 512: "Generally, the test of concealment is whether the weapon is so carried as not to be discernible by ordinary observation." Our conclusion is the evidence in this case meets this test. As to intent to conceal, which defendant claims was not shown, we said in State v. Mulconry, Mo.Sup., 270 S.W. 375, 378, quoting from State v. Carter, 259 Mo. 349, 359, 168 S.W. 679, 681: "'Where the state's evidence shows that the weapon is concealed, it would, no doubt, be a sufficient prima facie showing that he intended to conceal the same because from such proof it might well be inferred or presumed that the person intended to do that which, in fact, he did do, * * *.'" We so hold and therefore hold the court properly overruled defendant's motion for acquittal.

As to defendant's claim of error concerning the examination of Heath, citing State v. Castino, Mo.Sup., 264 S.W.2d 372, 375, the following occurred: "Q (By Mr. Matthews) Had you seen the gun before the time you saw it at the table? A The first time I seen it Mitchell had it in his hand with the hammer back and he said—told his brother something about it needed cleaning or something to that words. I forget how it was. Q Mr. Heath, have you discussed this case with me before? A Yes, sir. Q Have you ever stated other than this as to the gun? A Not under oath, no. MR. SHAW: Wait just a second. I am going to object to that as improper examination of his witness. THE COURT: Overruled. Let him answer. MR. MATTHEWS: Answer the question, please, sir. A Yes, sir, I have discussed it with you."

Heath was then asked if he had told the prosecuting attorney he had seen the gun earlier when he was driving with defendant and he said he had not. At that time, defendant's counsel stated an objection to the State impeaching its own witness and the court did not permit the next question, concerning defendant making a statement about

using the gun, instructing the jury to disregard it. There were no more questions by the State until after cross-examination of Heath by defendant's counsel, during which Heath said defendant's brother put the gun on the table and defendant picked it up off the table before he pointed it at Thompson. On redirect examination, after an objection by defendant's counsel to a question as to where Heath previously held conversations with the prosecuting attorney, the following occurred: "THE COURT: Did I understand you to previously testify that you have told the same thing here that you told Mr. Matthews before? THE WITNESS: I didn't tell him nothing under oath. THE COURT: That is not what I asked you. THE WITNESS: That is all I got to say. I didn't tell him nothing under oath." Thus unwillingness to testify frankly was displayed by Heath even on the court's questions.

Thereafter, Heath said the prosecuting attorney had talked to him three times before the trial. On further cross-examination, by defendant's counsel, Heath said: "He told me to be at the trial at a certain, certain date and he told me what questions he would ask me and what answers I should give him." Heath again during this cross-examination said the prosecuting attorney told him what answers he wanted. On further redirect Heath reiterated that the prosecuting attorney told him what to say in court. Heath was then asked if he knew what perjury was and upon objection the court ruled: "We will sustain the objection to that line of questioning and proceed from there." There was no further examination of this witness.

In State v. Shepard, 334 Mo. 423, 67 S.W.2d 91, 95, we said: "But where the witness is unwilling or unfriendly, especially if he be one whose testimony is necessary or important, the court in the exercise of a sound discretion may permit the asking of leading questions amounting to a cross-examination. This is particularly the case if the state is surprised by the witness' being unexpectedly hostile." See also State v. Palmer, Mo., 306 S.W.2d 441, 443; State v. Shelton, 351 Mo. 799, 174 S.W.2d 202, 205; State v. Taylor, Mo.Sup., 324 S.W.2d 643, 648, 76 A.L.R.2d 671. Unwillingness and hostility of this witness sufficiently appeared to warrant our ruling that there was no abuse of discretion in permitting such examination as was made and we so hold.

We have examined the record as required by our Rules 28.02 and 28.08, V.A.M.R., and find it sufficient with respect to those matters therein specified.

The judgment is affirmed.

All concur.