STATE of Missouri, Respondent,

v.

James Walter BOYD, Appellant.

No. 56799.

Supreme Court of Missouri,
Division No. 1.

March 12, 1973.

Motion for Rehearing or to Transfer to Court
En Banc Denied April 9, 1973.

788

---

John C. Danforth, Atty. Gen., Charles B. Blackmar, Special Asst. Atty. Gen., Jefferson City, for respondent.

Murry A. Marks, Clayton, for appellant.

WELBORN, Commissioner.

Appeal, filed prior to January 1, 1972, from judgment of conviction and three years' sentence, imposed under the Second Offender Act, after jury found James Walter Boyd guilty of carrying a concealed weapon.

At approximately 3:40 A.M. on July 11, 1968, Officer Archie Rippeto of the St. Louis County Police Department saw James Walter Boyd walking toward an exit door at the Lambert St. Louis Airport passenger terminal. He was carrying a dark brown attache case. A short time before, Boyd had alighted from Frontier Airlines Flight No. 720 at Gate 12 of the terminal. He walked from the gate area past the baggage area toward the exit door. Officer Rippeto approached Boyd and told him that he was under arrest. Officer Rippeto took the attache case from Boyd and along with other police officers escorted Boyd to the police room in the terminal

building, some 150 feet from the scene of the arrest. There Officer Rippeto opened the attache case and found in it a .25 caliber automatic pistol in a sock. In another sock in the attache case he found a clip for a .25 caliber automatic containing six bullets. He also found a box containing seventeen .25 caliber bullets. Two bottles containing prescription tablets were also found in the case.

At Boyd's trial on a charge of carrying a concealed weapon, the state's evidence showed substantially the above facts. The jury returned a verdict of guilty. The trial court, having found that the defendant had two prior convictions for purpose of the Second Offender Act, sentenced him to three years' imprisonment.

■ On this appeal, appellant's first assignment of error is based upon the trial court's overruling his motion to suppress on the grounds that his arrest without a warrant was invalid. A pretrial hearing on the motion was held and evidence presented, following which the court overruled the motion. A motion for rehearing resulted in another evidentiary hearing, with the motion again overruled. Appellant's arrest was based upon information supplied the police by an informant whose identity was not revealed. Appellant here contends that the state failed to establish the reliability of the informant and the adequacy of his message.

Special Agent Fritz J. Engelking, of the United States Customs Department, testified that, at around 9:30 A.M., July 10, 1968, a confidential informant told him that "James Walter Boyd was to take a TWA flight [at around 10:30] to Phoenix, Arizona, to obtain a large quantity of drugs or to arrange to obtain a large quantity of drugs to be returned to St. Louis, Missouri; further that he was carrying a brown attache case which contained a [twenty-five automatic] pistol very similar to the pistol that he had been arrested with in June, 1968, in one of the outlying municipalities."

Engelking got in touch with Detective Isaah Brown of the St. Louis County Police Department and asked him to go to Lambert St. Louis Airport and check on whether Boyd was leaving on a TWA flight and to obtain a description of his clothing. Brown went to the TWA counter and learned that a person named J. W. Boyd had reservations for Flight 467, scheduled to leave at 10:30; that the ticket had been picked up and a person using such ticket had boarded the airplane. Brown went to the plane and saw a person who had used the ticket occupying a seat on the plane. Brown noted that the man was wearing a seersucker jacket and light trousers. He also noted his height and weight. After he left the plane, Brown conveyed the description to Agent Stamm of the Federal Bureau of Narcotics.

Officer Rippeto testified that, at around 6:00 P.M. on July 10, Engelking, with whom he had worked for several years, telephoned him and told him that Boyd was in Phoenix and would be returning to St. Louis by Frontier Flight 720, to arrive at Lambert Field at 4:30 A.M., on the morning of July 11; that he was carrying a brown attache case and had in his possession a .25 caliber automatic pistol and an undetermined amount of illicit drugs. Rippeto made no further check of the information and went to the airport at around 3:30 A.M., July 11. Agents Engelking and Stamm were there, along with other federal agents, another St. Louis County Police Department detective and a City of St. Louis police officer. All were there to observe Boyd's arrival and when Boyd did arrive, Rippeto made the arrest as outlined above.

Rippeto and Engelking testified on the original hearing on the motion to suppress. Brown and Engelking testified on the rehearing. In addition, Bernard Steinger, an attorney, testified on the original hearing.

Steinger testified that Boyd, a client of his, came to his office in Clayton at around 8:30 A.M. on July 10, 1968; that at

around 9:45 A.M., a call was received from another client about a matter in Phoenix, Arizona, and that, after a discussion with another client, it was decided at about ten o'clock Boyd should go to Phoenix; that a call was made to Boyd's secretary to obtain reservations to fly to Phoenix, and that Boyd left his office to go to the airport with only about 30 to 45 minutes to catch the plane.

Engelking testified that he had known his informant approximately two years. He had given Engelking information on two previous occasions. One involved selling heroin and a criminal charge was filed. The second instance involved marijuana possession. Engelking acted on the information but prosecuting authorities refused to prosecute. Insofar as the information he gave Engelking about Boyd was concerned, Engelking made no effort to corroborate it, other than by verifying through Officer Brown that Boyd did board a TWA plane for Phoenix.

Appellant argues that Brown's corroboration of Boyd's departure is without significance because there was no evidence that Brown communicated the information to Engelking. Brown did testify that he conveyed the information he obtained to Agent Stamm. Stamm did not testify at either of the pretrial hearings. However, there was evidence that Stamm was at the airport when the arrest occurred, giving rise to a reasonable inference that he was working on the case. Engelking did testify that he received from Brown verification that Boyd had left for Phoenix, a description of the clothes he was wearing, and information about the flight on which Boyd would, and in fact did, return. In these circumstances, the evidence clearly supports the inference that Brown's information was conveyed to Engelking, although not directly, and that Engelking did rely upon it as corroborating, in part, the information which he received from his informant.

The trial court did not err in failing to sustain the motion to suppress on the

grounds that there was no probable cause for the arrest of appellant. The arrest was based upon information furnished by an unidentified person, but that informant was known to Agent Engelking, had previously given Engelking reliable information and the information he gave him was in part corroborated by police investigation. Rather than Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969), relied upon by appellant in support of his contention here, this case is similar to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), distinguished by the majority opinion in Spinelli. In Spinelli, the court did state that when information from an unidentified informer is relied upon to provide probable cause for the issuance of a search warrant, the affidavit for the warrant should "contain a sufficient statement of the underlying circumstances from which the informer concluded" that the defendant was engaged in unlawful activity. However, the court recognized that, absent such statement, a proper finding of probable cause may be made when "the tip describe(s) the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

"The detail provided by the informant in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark. While Hereford, the Government's informer in that case did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his informa-

tion in a reliable way." 393 U.S. 416–417, 89 S.Ct. 589.

In this case, the informant did not provide the description of the clothing worn by Boyd when he boarded the plane in St. Louis. He did, according to the police officers, provide information that Boyd was carrying a brown attache case. The information as to Boyd's departure was corroborated, and he was carrying a brown attache case when he returned to the St. Louis airport. Therefore, Draper, not Spinelli, is the controlling case here.

Further support for the view that neither Spinelli nor Aguilar v. Texas, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), also relied upon by appellant, here controls is found in the recent decision in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (Preliminary Print) (1972). In that case, an informant had told a police officer that the defendant was seated in a nearby vehicle carrying narcotics and with a gun in his waist. The officer approached the vehicle in which defendant was seated and when the defendant rolled down the window, the officer reached in and discovered the weapon in the waistband. In upholding the validity of the arrest and search on a charge of carrying a concealed weapon, the court stated (407 U.S. 146–147, 92 S.Ct. 1923):

"Applying these principles to the present case we believe that Sgt. Connolly acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant herself might have been subject to immediate arrest for making a false complaint had Sgt. Connolly's investigation proven the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insuf-

ficient for a narcotics arrest or search warrant, see, *e. g.,* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." (footnote omitted)

Here the information as corroborated was adequate to justify the arrest.

In McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), a warrantless arrest, based upon information police received from an unidentified informant was held valid, and the search incident to such arrest sustained. Unquestionably, the circumstances of McCray were stronger than those of this case—the informant accompanied the police to the scene of McCray's illegal narcotic sales; he had provided police with credible information in 20 to 25 cases over a two-year period— but there is no reason to conclude that an arrest based upon information from an informer must have all of the surrounding circumstances which existed in McCray.

In Recznik v. City of Lorain, 393 U.S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968), the informers were previously unknown to the officer, being identified only as "people on the street." 393 U.S. 169, 89 S.Ct. 342.

In Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), a warrant based upon an informer's tip that two persons had committed a burglary was held invalid when there was nothing to support either the reliability of the informant or the tipster's conclusion that the persons named were connected with the crime. Of interest is the following from Whiteley (401 U.S. 567, 91 S.Ct. 1036):

"This Court has held that where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). See Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in *Draper* itself, were in the process of committing the felony."

This statement lends support for the conclusion that Draper is the controlling authority in the situation here presented.

■ Appellant's reliance on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), as invalidating the search because it took place 150 feet from the scene of the actual arrest is misplaced. Chimel deals with the proper scope of a search of the premises at which a person is arrested and limits such search to the person and the area from within which he might have obtained either a weapon or something that might have been used as evidence against him.. The attache case was taken from appellant's person upon his arrest and the fact that it was not examined until the appellant was 150 feet away does not cause the search and seizure to be beyond the limits of a proper search of the person as an incident of an arrest.

■■ Appellant contends that the trial court erred in overruling his motion to require the state to disclose the confidential informant. In State v. Sellaro, 448 S.W.2d 595, 598 [2] (Mo.1969), this court applied, on this issue, the rule followed in Illinois and which met the approval of the United States Supreme Court in McCray v. Illinois, supra. The rule so applied is that when the issue is not guilt or innocence, but probable cause for an arrest, the identity of the confidential informer need not, as a constitutional requisite to a fair trial, be disclosed "if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable in-

formant." 386 U.S. 305, 87 S.Ct. 1059. In this case, the officers were cross-examined at length and the court concluded that they did have probable cause for the arrest.

Appellant argues that, in view of the testimony of attorney Steinger, the court should have at least conducted an in camera examination of the informant, such as was ordered by the Eighth Circuit Court of Appeals in United States v. Hurse, 453 F.2d 128 (1972). In that case, the court concluded that provisions of the proposed Federal Rules of Evidence, authorizing in camera examination of confidential informants, should be followed. McCray v. Illinois, supra, remains the most recent pronouncement of the United States Supreme Court on the constitutional obligation imposed upon the states in such matters. This court will continue to follow that pronouncement.

■ The fact that appellant was carrying the weapon concealed in the attache case was sufficient to make a prima facie case of carrying a concealed weapon. Ownership of the weapon was of no significance and the circumstances permitted the jury to infer that appellant was aware of the presence of the weapon and intended to conceal it. State v. Carter, 259 Mo. 349, 168 S.W. 679 (1914); State v. Crone, 399 S.W.2d 19 (Mo.1966). State v. Tate, 416 S.W.2d 103 (Mo.1967), relied upon by appellant, is not here applicable. In that case, evidence that the defendant fired a gun and threw it into a gutter was held not to show that prior to such acts the defendant had concealed the weapon. Here there is no doubt that the weapon was con‑cealed.

■■ Appellant contends that the state failed to prove venue in St. Louis County. All of the events in evidence on which the charge was based occurred at Lambert St. Louis Airport. Inasmuch as we know judicially that Lambert St. Louis Airport is located in St. Louis County, the jury could, from the evidence, reasonably find that the crime occurred in St. Louis County. State

v. Garrett, 416 S.W.2d 116 (Mo.1967); State v. Bradford, 462 S.W.2d 664, 671–672 [6, 7] (Mo.1971).

■ The case of State v. Dorsey, Mo. Sup., 491 S.W.2d 301, Division Number One, decided March 12, 1973, answers appellant's complaint based upon the fact that the gun was not loaded. In that case, the court stated that "a pistol is universally classified as a dangerous and deadly weapon even though not loaded." There was, therefore, no necessity for the court to define the term "dangerous and deadly weapon."

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.