STATE of Missouri, Respondent,

v.

Gregory KENT, Appellant.

No. KCD 27720.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

Thomas J. Cox, Jr., Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The defendant was charged by Count I of an indictment with possession of the controlled substance marijuana and by Count II with possession of the controlled substance amphetamine. The jury convicted the defendant on Count I and assessed his punishment at imprisonment for a term of five years, but acquitted him on Count II of the indictment.

On this appeal, the defendant contends that his arrest was without probable cause and that the search of his luggage which disclosed the contraband was unlawful as not incidental to the arrest.

The train of events which led to the search, seizure and eventual conviction of the defendant was set in motion by a telephone call from Special Agent McCravy[1] in San Diego, California, to one Sulak, supervisor in the Kansas City, Missouri office of the Drug Enforcement Administration which informed him that on that day, February 7, 1974, he had received a tip from a reliable source that a caucasian male was traveling under the name of Kent Roberts[2] enroute by train to Kansas City from San Diego with three suitcases of marijuana in his possession. McCravy related a physical description of the suspect, Gregory Kent, his apparel, and the numbers on the claim checks attached to his suitcases, and that he would arrive in Kansas City on Train No. 4, on February 8, at 5:35 in the morning.

Sulak noted this information on a pad and transmitted it to his immediate subordinate, Dempsey, who in turn related the information to Officer O'Donnell of the Narcotics Unit of the Kansas City Police Department.

On the next morning, O'Donnell, accompanied by other officers, undertook to intercept at the Union Station the person of the given description: a caucasian male, traveling under the name of Kent Roberts, six feet and one inch tall, 175 pounds in weight, between 25 to 28 years in age, dressed in a light brown jacket, maroon shirt and blue trousers, with a full beard and mod cut medium light brown hair. When the train arrived, he saw one alight who answered that description, surveilled him as he moved to the lobby to claim three suitcases in the colors described [one black, another yellow, and the other green] which were then taken to a taxi stand. After the cab driver had asked if the suitcases were his, and received an affirmative reply, O'Donnell placed him in arrest.

The defendant was taken to the security office of the Union Station where a weapons search of his person discovered a small amount of marijuana and amphetamine. One of the suitcases [Exhibit 2, the black luggage] was opened there and disclosed kilo bricks of marijuana. The yellow and green luggage were later opened at police headquarters and were found to carry the same substance. The arrest and search both were conducted without the authority of formal warrant.

The defendant took the stand to explain the circumstances by which the marijuana had come into his possession. He had developed the marijuana practice while doing service in Vietnam. He had earlier refused opportunity as a courier to transport marijuana from California, but when his financial condition became desperate, he agreed

---

1. Special Agent McCravy was then with the United States Department of Justice assigned to the Bureau of Drug Enforcement Administration.

2. Kent Roberts proved to be Gregory Kent, the defendant.

to the plan. He was given an airline ticket to San Diego and instructed to meet a man there who was to give him a train ticket and some baggage claim tickets and two keys. On his return, he was to meet a man who would have the key to fit the other suitcases. At the conclusion of the task, he was to be paid $1,000. He knew the bags contained marijuana and that his enterprise was unlawful.

The motion of the defendant to suppress the contents of the three suitcases seized by the police at the Union Station on the morning of the arrest was heard on evidence and denied. Other evidence found in the green bag, a 35 mm canister of small white tablets, was excluded for want of proper identification of custody, and is not a subject on this appeal.

The first contention is that probable cause for the arrest was not established because there was no evidence that the tip which motivated the arrest was reliable or of the underlying basis for the conclusion of the informer that Kent was transporting marijuana; but, probable cause assumed, the right to arrest was nullified by the misflow of the information from McCravy to the officers who eventually made the arrest.

An arrest, with or without authority of formal warrant, is lawful only upon probable cause. There is probable cause to arrest where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief" that an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). The constitutional requirement of probable cause can be satisfied by hearsay information. *Aguilar v. State of Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). An officer may rely for an arrest on information received through an informant, and is not confined to his direct observations, so long as the circumstances give reason to believe that the informant was generally trustworthy and that the

conclusion reached by him was on the basis of information obtained in a reliable way. *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. States of Texas, supra*, l.c. 114. The Missouri Supreme Court has construed these principles in *State v. Wiley*, 522 S.W.2d 281, 287[10–11] (Mo. banc 1975) to mean that "[a]s long as there is a substantial basis for crediting the hearsay [of the informant]", probable cause for arrest is shown; nor is there any "absolute requirement that the informant be one of previous reliability."

The evidence of Agent McCravy was that the information was a tip from one who over the past two years had informed on more than 40 occasions concerning the traffic in marijuana as the result of which four thousand pounds of the substance were confiscated and seventy-five arrests made. Of those arrested, most were convicted. The informant professed the aptitude to detect the presence of marijuana by smell. The defendant contends that this evidence does not prove the reliability of the informant because it does not show the probability of the correctness of his information on a given occasion.

The answer is found in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) which affords a fact analogy of remarkable similarity. The informant Hereford had for six months supplied information to federal agent Marsh concerning violations of the narcotics law and had always proven reliable. The informant told the agent that Draper was peddling narcotics to addicts in Denver and would be returning to Denver from Chicago by train on either the following day or the day after with three ounces of heroin. A detailed description was given the agent by the informant of the clothing and person of the defendant. The agent was also told that Draper was a fast walker and would be carrying a tan zipper bag.

On the second day, agent Marsh and a local policeman at the Denver Union Station saw a person who fit the physical and appareled description of Draper alight from

the Chicago train. The man carried a tan zipper bag and walked rapidly toward the exit. They arrested Draper, searched him, and found two envelopes of heroin in his overcoat. The United States Supreme Court held that since the informant had always given accurate and reliable information, and on the occasion in question, his description of Draper was verified in detail, probable cause to arrest him had been established.

■ The parallel between *Draper* and the case at bench is readily apparent. The information as to the place and time of arrival, the garb, physique of the defendant, the numerals on his luggage claim checks, the number and colors of his travel impedimenta, were all verified by the arresting officers to the last detail. The defendant contends, however, that the hearsay of the informant was not probable cause for arrest under *Aguilar* because the reliability of the informant was not shown. It is his contention that the evidence of Agent McCravy that two tons of marijuana were confiscated as the result of tips from this informant and that most of those arrested had been convicted does not portend the reliability of his tip on the occasion of his arrest. It was also the evidence of McCravy, however, that the informant handled the packages of marijuana concerning which he had informed and that he had never known him to be wrong about information given him. The full text of the McCravy testimony was sufficient to establish the credibility of the informant under *Aguilar*.

■ Even in the absence of an explanation from an informant as to how he came to his knowledge, an officer may act on the tip so long as it describes the criminal activity in sufficient detail to distinguish the accusation from rumor and allows independent corroboration by the officer. *Wiley, supra,* 522 S.W.2d l.c. 288. *Spinelli* affirms the holding of *Draper* that the hearsay of an informant given in detail and independently corroborated by the police suffices as probable cause for arrest [393 U.S. l.c. 416–417, 89 S.Ct. l.c. 589]:

The detail provided by the informant in *Draper v. United States* . . . provides a suitable benchmark. While Hereford, the Government's informer in that case did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. . . . Independent police work . . . corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established.

*Draper* concludes the issue before us. See, also, *State v. Boyd,* 492 S.W.2d 787, 788[1] (Mo.1973); *United States v. Murray,* 492 F.2d 178, 188[12] (9th Cir. 1973).

■ The defendant argues, however, that although an arrest may validly rest on the hearsay of an informer, when that information then flows from one police agent to another, it becomes hearsay upon hearsay and will not justify an arrest unless each incidence of hearsay meets the *Aguilar* test that the information come from a reliable source and that the basis for the conclusion of the informant has been shown. The defendant proposes [on the supposed authority of *United States v. Wilson,* 479 F.2d 936 (7th Cir. 1973)] that although McCravy had the right to arrest on the hearsay of the informant, as to O'Donnell to whom the tip was passed on by another federal agent, the information was only uncredited remote hearsay and was not probable cause for the arrest of the defendant. This argument

misconceives *Wilson*. There, the defendant attempted to charge some purchases at a filling station to a stolen credit card. The attendant made a routine check by telephone with American Express, the credit card company, and was told the card had been stolen. The attendant gave the information to the police who issued a bulletin for the arrest of the defendant. Acting on the information of the police bulletin, officers arrested the defendant and recovered the credit card. The court noted that the information imparted from American Express to the attendant, and then from him to the police, was hearsay upon hearsay, but that in the circumstances of the case each incidence of hearsay satisfied the dual requirements of *Aguilar* and thus constituted probable cause for arrest. Once the hearsay information from the informant to the police agent satisfies probable cause, an arrest made of the suspect by another officer on that information also rests on probable cause. The court in *Wilson* stated the principle simply [l.c. 939]: "For the arrest to be valid, the officer who causes the radio bulletin to be issued must have sufficient information to establish probable cause". Our Supreme Court has spoken on this issue in *State v. Whorton*, 487 S.W.2d 865, 867 (Mo. 1972):

> "[If the information supplied the police] was reliable it did not lose its reliability when it was transmitted by these officers to police communications and in turn to other police officers who heard such communications . . . [W]here reliable information is originally imparted to the police, the fact that such information does not come directly from the informant to the arresting officer does not prevent the latter from relying on its trustworthiness when it reaches him through official channels."

■ In this case the tip information entered the continuum of police communications when Agent McCravy in San Diego telephoned his Kansas City correspondent, Agent Sulak. The tip from the informant was primary hearsay, corroborated in detail by the police, and therefore sufficient as probable cause for the arrest of the defend-

ant. That the information was then imparted by the agent who had received it from the informant, sequentially, to the officer who made the arrest did not require the officer who executed his authority on the basis of the information to re-establish its integrity.

■ The final point contends that, a valid arrest assumed, the search of the three pieces of luggage went beyond *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) which narrows the permissible scope of search incident to arrest to include the person of the arrestee and [l.c. 763, 89 S.Ct. l.c. 2040] "the area 'within his immediate control'—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence." The defendant argues that at the time of the search he was under police guard, manacled and separated from the suitcases, and could not have reached the bags for a weapon or to destroy evidence.

This contention was considered and rejected in *State v. Boyd*, 492 S.W.2d 787 (Mo.1973), where an attache case was taken from the person of the defendant upon his arrest and was not examined until he was 150 feet away. The search was held to be incident to a lawful arrest within the *Chimel* rationale. More analogous on the facts is *United States v. Mehciz*, 437 F.2d 145 (9th Cir. 1971), where the defendant argued that his suitcase had been taken from his possession for search after he had been handcuffed by federal agents and therefore was not within his "immediate control" within *Chimel* and was not subject to search without a warrant. The court found a constitutional difference between the invasion of privacy which attends house search as in *Chimel* and the lesser intrusion of a search incident to the arrest of the defendant in a public place.

■ Nor was the search of two of the baggage invalidated by the lapse of time between the arrest and the search at the police station. "Once the accused is lawfully arrested and in custody, the effects in his

possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other." *United States v. Edwards*, 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974); *United States v. Battle*, 166 U.S.App.D.C. 396, 510 F.2d 776, 778 (1975).

The search of the luggage, moreover, was lawful on the separate and independent ground that "personal effects which are in the immediate possession of an individual at the time of his valid arrest may be searched without warrant immediately subsequent to the arrest if there is probable cause to believe that they contain contraband." *United States v. Buckhanon*, 505 F.2d 1079, 1082[3] (8th Cir. 1974). There was probable cause to believe that the three suitcases contained controlled substances, contraband under the law.

The judgment is affirmed.

All concur.

