STATE of Missouri, Respondent,

v.

Joe Thomas CAMPBELL, Appellant.

No. 36932.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Sept. 7, 1976.

Motion for Rehearing and for Transfer to
Supreme Court Denied Nov. 12, 1976.

George D. Johnson, James B. Herd, St. Louis, for appellant.

Preston Dean, Douglas Mooney, Asst. Attys. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

Joe Thomas Campbell has appealed from the judgment entered pursuant to jury verdict by which he was found guilty of exhibiting a deadly weapon in a rude, angry and threatening manner in the presence of Dennis Horton, a police officer, in violation of § 564.610 RSMo 1969.

Appellant does not challenge the sufficiency of the evidence, but a brief statement of the circumstances leading up to the charge against appellant is essential.

About seven o'clock in the evening of February 13, 1971, appellant, his brother, Paul, and Jack Daunty left a tavern where appellant worked, and after stopping at several other taverns, they entered the Tip Toe Lounge about eleven o'clock. While there an incident occurred involving appellant, which included a threat with a knife. Shortly after this incident appellant and his brother left the Tip Toe Lounge, but they returned in about fifteen minutes, and when they entered the Lounge appellant was carrying a loaded shotgun.

Two police officers, one of which was Dennis Horton, were in the Lounge. They were there in connection with a previous unrelated incident and had been asked by the owner to remain until the Lounge closed. When appellant entered with the shotgun he made a verbal threat to kill some of the patrons and was "waiving the shotgun around" while holding it parallel to the floor about waist high. Officer Horton identified himself to appellant and told him to drop the shotgun. Instead of doing so, he pointed the gun at Officer Horton, lunged at him, and said, "I'll kill you too." The officer knocked the gun away and grabbed appellant and they both fell to the floor. A violent struggle then occurred, with appellant's brother and the other police officer joining in, over possession of the gun. The officers eventually subdued appellant and his brother and obtained the gun.

Appellant had marked for identification four colored photographs of himself and three of his brother which showed extensive facial and head injuries sustained by them at the hands of the police when they were subdued. The trial court permitted some of these photographs to be shown to witnesses during their cross-examination pertaining to identification, but it refused to permit any of them to be shown to the jury. Appellant assigns this refusal as error in three separate points, but before we consider them individually we shall dispose of certain issues common to each point.

The seven pictures are in color, and without attempting to describe them it is sufficient to say that they are individually and collectively gruesome and inflammatory. This, however, would not result in them being inadmissible in evidence if they have probative value as to an issue in the case, *State v. Jones,* 515 S.W.2d 504 (Mo. 1974), unless the situation is so unusual that the extent of the prejudice overrides the relevancy and probative value. *State v. Jackson,* 499 S.W.2d 467 (Mo.1973). The relevancy of evidence depends upon whether the fact sought to be shown "tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue." *State v. Tevis,* 340 S.W.2d 415, 420 (Mo.App.1960); *State v. Walden,* 490 S.W.2d 391 (Mo.App. 1973). But, if evidence, whether in the form of oral testimony or photographs, is offered as to matters "which have no bearing upon the matters in issue it should be excluded," *State v. Edmonson,* 371 S.W.2d 273, 277 (Mo.1963), and when offered evidence is immaterial and irrelevant it is not error to refuse its introduction. *State v. Clemmons,* 460 S.W.2d 541 (Mo.1970).

Appellant was charged with exhibiting a dangerous and deadly weapon in the presence of Dennis Horton in a rude, angry and threatening manner. Whether he did so was the sole issue in the case, and the evidence clearly authorized a finding that he did, and the jury so found. The evidence also authorized a finding that *after* he did so, the two police officers disarmed him and subdued appellant and his brother when the two violently resisted. Whether the injuries sustained by appellant and his brother, as shown by the photographs, were the result of no more than necessary force to subdue them in view of their violent resistance, or whether the injuries in some degree were the result of "over reaction" on the part of the police officers, and we in no way infer or imply that this occurred, the amount of such injuries and their nature would not tend to prove or disprove any

fact in issue, or to corroborate any relevant evidence bearing on the principal issue. Therefore, the photographs were not admissible in evidence unless for some other reason they can meet the relevancy test. As noted, appellant urges three reasons.

### Impeachment

Appellant asserts that the "exclusion of said photographs, together with supporting testimony, prevented [him] from impeaching State's witness Mark Crymes' testimony that he observed appellant (rather than his brother) pull the knife."

Mark Crymes testified on direct examination that when he arrived at the Tip Toe Lounge appellant and his brother were already there, and that while he and a friend were talking, appellant "turned around with a knife in his hand" and said he would "cut my throat." Appellant points out that no other witness testified that he saw appellant display a knife during the incident. During the cross-examination of Crymes appellant was permitted to show him three of the photographs of appellant and one photograph of his brother to see if he could identify the person shown therein. Appellant makes no contention that the witness should have viewed the other three photographs. He testified that one of the photographs of appellant shown to him could have been a photograph of a "little bit of anybody," that another was of the "same man" and that the third was of the "back of his head." When shown the photograph of appellant's brother, Crymes testified that the person there shown was not the person who threatened him with a knife.

Appellant's argument as to why all the photographs should have been shown to the jury is as follows: "If the photographs would have tended to show that the witness was mistaken in his identification of the appellant as the knife-wielding assailant * * * then Crymes' testimony would have been substantially impeached and the State's entire theory of motive on the part of appellant in committing the offense charged would have been negated."

■ We first note that the photographs did not portray appellant or his brother as they appeared at the time of the knife incident, and we do not agree with appellant's assertion, that the photographs tended to show that Crymes was mistaken as to his identification of appellant.

■ Next, motive was not an element of the offense charged against appellant. The act of appellant in entering the Lounge and pointing the shotgun at Officer Horton, and the jury found that he did so, needed no explanation to indicate intent or motive. "The act itself carried the intent with it." *State v. Spray,* 174 Mo. 569, 74 S.W. 846, 851 (1903). Therefore, as far as the proof of motive was concerned, it was immaterial who had the knife at the time of the previous incident, or in fact whether anyone displayed a knife. We find no error in the refusal of the trial court to display the photographs, or the ones permitted to be viewed by Crymes, to the jury for the reason advanced in appellant's Point I.

### Self Interest of Horton

Appellant next asserts that the court erred in "excluding testimony and photographs of appellant and his brother" because they showed "the nature and extent of the injuries sustained by appellant and his brother and therefore demonstrated the self-interest of Police Officer Horton's testimony." He argues that the nature and extent of his injuries would show they were "far in excess" as to what the "police testimony" was "concerning the amount of resistance offered by appellant and his brother," and for that reason the photographs would demonstrate the self-interest of the "police officer testimony."

■ The testimony of Officer Horton was, in effect, that appellant did not give up the shotgun "willingly," that after the officer obtained possession of the gun, appellant "tried to get it back," and that appellant did not stop struggling for the gun until he was completely subdued. Aside from the fact that the amount of resistance by appellant, and the amount of force which was necessary for the officers

to disarm him *after* the commission of the offense was irrelevant to the issue of whether appellant committed the offense charged, the trial court was vested with a substantial degree of discretion as to how far and in what respect appellant would be permitted to go into these matters not bearing directly on the issue of guilt or innocence.

Appellant cites *Thorton v. Vonallmon,* 456 S.W.2d 795, 798 (Mo.App.1970). In that case it was stated as a general rule that "a witness' interest in the result of an action, civil or criminal, in the trial he testifies, or his bias or prejudice in favor or against any of the parties thereto, is proper to be shown for consideration by the jury as bearing on the credit which should be given to his testimony. The facts or circumstances showing the interest or bias of a witness and his relation to or feeling toward a party are not irrelevant or immaterial matters, even though they have no evidentiary bearing on the issues tendered by the pleadings." But, it was further stated that the trial court "may properly limit the scope and extent of cross-examination into the witness' bias or prejudice * * * but it is not within the trial court's discretion to prevent it entirely." In this case the trial court did not entirely prevent appellant from showing the possible interest of Officer Horton. He was permitted to show that a civil suit for damages had been filed against him by appellant, and he was cross-examined at great length concerning the injuries to himself and to appellant and his brother. The court viewed the photographs, it heard the testimony pertaining to the extent of injuries, and the testimony pertaining to the amount of force necessary for the officers to obtain possession of the shotgun and to subdue appellant and his brother. The trial court has considerable discretion in determining how and in what manner, and to what extent, the issue of witness interest should be shown. Assuming that the photographs would have had some bearing on Officer Horton's interest, and we have serious doubts as to this, under the total circumstances it cannot be said that the trial court abused its discretion in refusing to permit the colored, and admittedly inflammatory, photographs to be exhibited to the jury for the reasons asserted in appellant's second point.

### Loss of Memory

Appellant testified that after visiting at least two other bars he went to the Red Top Bar, and while he could remember going to that bar he had no recollection of leaving it. He also testified that he had no recollection of being in the Tip Toe Bar on the night of February 13, 1971. In his Point III appellant asserts that the trial court erred "in excluding testimony and photographs" because they were "relevant in that they showed the nature and extent of the injuries sustained by appellant and his brother," and by the court's action appellant was precluded from "demonstrating the reason he was unable to account for his actions prior to and including his arrest." He advised the trial court that the purpose of seeking the admission into evidence of the photographs (presumably only the four of appellant) was to show "his injuries, particularly the head injuries," and he argued that a jury could then "deduce that a person who had sustained that type of an injury might not have a recollection of the event that caused the injury." He further argued that with the knowledge of what was shown by the photographs the jury "can infer without any medical testimony a post-traumatic amnesia." We note that the court expressly stated that it was "not precluding [appellant] from bringing in any medical evidence * * * through a competent physician to give his opinion as to whether this trauma would have caused the particular grade of amnesia."

The cause of appellant's amnesia, whether it was from intoxication or from head injuries, was not a matter within the ordinary experience and common knowledge of jurors, or a matter subject to be determined by jurors from the proof of physical facts without the aid of the opinion of experts in the field. Therefore, it was

within the discretion of the trial court to withhold from the jurors the photographs when offered to prove the cause of appellant's amnesia, and in view of the total circumstances, and the statement by the court that expert medical testimony as to the cause of appellant's amnesia would be permitted, we find no abuse of discretion.

Appellant's final contention is that the trial court erred in submitting to the jury Instruction No. 5, the verdict-directing instruction because it "omitted to require a finding of criminal intent or willful misconduct on the part of the defendant."

Appellant points out that the indictment charged that appellant, "on the 13th day of February, [1971], at the City of St. Louis * * *, unlawfully and feloniously, in the presence of * * * Dennis Horton did exhibit a certain dangerous and deadly weapon * * *." Instruction No. 5 was in the precise form of MAI–CR 13.12, and in its material parts was as follows:

If you find and believe from the evidence beyond a reasonable doubt;

First, that on February 13, [1971], in the City of St. Louis, State of Missouri, the defendant exhibited a shotgun in the presence of Dennis Horton, and

Second, that he did so in a rude, angry and threatening manner, then you will find the defendant guilty of exhibiting a deadly weapon in a rude, angry and threatening manner.

Appellant admits that § 564.610 RSMo 1969, which defines the offense charged, "does not specifically set forth criminal intent as an element of the offense." He contends, however, that the trial court should have required a finding in Instruction No. 5, or by use of another instruction, of criminal intent and that its failure to do so was prejudicial error.

The legislative definition of some crimes include specific intent as an element. For example, assault "with intent to kill, maim, ravish or rob." § 559.180 RSMo 1969. MAI–CR 6.22 which submits these offenses specifically requires a finding that the accused committed the assault "with intent to (kill) (maim) (rape) (rob)." However, the statutory definition of other offenses do not include specific intent as an element, and the MAI–CR submission of those offenses do not require the finding of a specific intent. See MAI–CR 6.40 Rape: Forcible; MAI–CR 12.40 Molesting a Minor; and MAI–CR 13.20 Driving While Intoxicated. The offense of exhibiting a weapon in a rude, angry or threatening manner falls into this latter group. It is true that there may be exceptions to this general statement. Although § 564.610 RSMo 1969 does not make specific intent an element of the offense of carrying a concealed weapon, the courts have engrafted such an element, *State v. Carter*, 259 Mo. 349, 168 S.W. 679 (1914); *State v. Jordan*, 495 S.W.2d 717 (Mo.App.1973), apparently because of a practical acknowledgement that small arms can become unintentionally concealed. The additional required finding by a jury is a benefit to an accused, and cannot be basis for a complaint by him. However, one cannot without the specific intent to do so "exhibit [a firearm] in a rude, angry or threatening manner." The Supreme Court of this State has not deemed it proper to require a separate finding of specific intent in the submission of the offense charged against appellant, and this court can perceive of no reason why it should be done.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.