**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thurlester WILSON, Defendant-
Appellant.**

**No. 71-1764.**

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1972.

Decided Sept. 7, 1972.

Joseph Cohn, E. St. Louis, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Michael L. Levinson, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, PELL, Circuit Judge and DURFEE*, Senior Associate Judge.

DUFFY, Senior Circuit Judge.

This appeal follows a conviction of the defendant for violation of the federal

---

* Senior Associate James R. Durfee of the U. S. Court of Claims is sitting by designation.

firearms laws.[1] Defendant Wilson was sentenced for a term of three years' imprisonment.

The principal issue before us is whether the sawed-off shotgun which was the basis for the indictment and which was found by police officers during a search for which a warrant had been procured, was tainted by previous police action and conduct which uncovered evidence forming the probable cause basis for the issuance of the search warrant.

Defendant contests the constitutionality of police tactics and conduct during his initial encounter with police with respect to an American Express Credit Card which was extracted from his person by one Trooper Williams.

On January 21, 1971, defendant Wilson was driving an automobile on Interstate Highway 57, south of Salem, Illinois, at approximately ten o'clock in the morning. Defendant was stopped by Illinois State Trooper Williams at a location on the highway where two other occupied police cars were positioned. Trooper Williams testified at the trial that the sole basis for this detention of defendant was a radio bulletin which he had heard previously over his radio which stated that a "colored male, had in his possession an American Express credit card which was stolen" and was driving a red 1970 Ford Torino with a certain license plate number.

The government concedes the fact that defendant had not violated any traffic laws, or at this precise time was there any other known reason for his detention except for the aforementioned information received by means of the radio bulletin.

Upon being stopped by the police, defendant Wilson opened his car door and left his automobile. He met the officers about mid-way between the assembled automobiles.

At the request of Trooper Williams, defendant produced a driver's license which had been issued in the name of William Kotinas. Without further colloquy, Officer Williams commenced a complete search of the person of defendant Wilson.

After a "pat-down" by Officer Williams, he reached into defendant's pocket and removed an American Express Credit Card which was later used as a probable cause basis in securing a search warrant for the automobile which defendant was driving. Defendant was then told by one of the officers to follow the police car in his own vehicle to the Salem County jail, which he did.

At the trial, Officer Williams did testify that his search of defendant was for his (Williams') own protection. However, the "pat-down" had not revealed a potential weapon in any of Wilson's pockets. There was nothing in the radio bulletin to indicate the suspect was dangerous. Furthermore, the apprehension occurred at ten o'clock in the morning with three police officers and squad cars present.

The first radio message received by Trooper Williams was based upon a telephone statement to police authorities by one Mayhaus who was the assistant manager of a truck stop on the highway where defendant purchased gasoline and attempted to purchase other articles with an American Express credit card.

A clerk at the gasoline station informed defendant that when purchases made by use of the card exceeded $25, the card must be verified with the American Express Division of Texaco. Defendant then talked on the telephone with Texaco but after a short conversation, the defendant hung up the phone and left the station without making any additional purchases.

Mayhaus testified that when he called the American Express Division of Texaco to inquire about the validity of the credit card, he talked to some unidentified and unknown person who informed him that the card had been stolen.

---

1. 26 U.S.C. § 5861(d), § 5871, possession of an unregistered firearm.

Mayhaus then contacted the police giving them this information which formed the basis of the radio bulletin.

After arrival at the Salem County jail, the investigating officers received another radio communication to the effect that the driver's license presented by the defendant had been taken from a University of Illinois policeman in an armed robbery. Defendant was incarcerated after this second radio message had been received by the officers.

Only after the defendant had driven his car to the County jail accompanied by the officers in their squad cars and after the second radio communication had been received by the officers, was the defendant given his Miranda warnings and jailed.

Following Wilson's incarceration, Trooper Weems signed a Complaint for a search warrant for the search of the motor vehicle Wilson was driving. The Complaint indicated that the officers were "looking for other credit cards, papers, which may be stolen belonging to William Kotinas of Chicago, Illinois". The certificate of probable cause was signed by a magistrate. The officers then searched the defendant's vehicle and found the shotgun in a duffle bag in the rear of the automobile.

A motion to suppress evidence with respect to the shotgun was denied by the District Court prior to trial as were other defense motions for post-conviction relief.

Upon appeal, the government argues that the arrest was made by the state troopers at the occurrence of Wilson's apprehension on the highway.

Defendant insists that if he was arrested on the highway by police officers, his arrest and subsequent search were constitutionally impermissible for the essential information for a probable cause basis for such action was lacking.

Conversely, if the arrest was not made until the arrival of defendant at jail accompanied by police officers, Wilson argues on appeal that the intrusion of the police officers in detaining him and searching his person was not warranted by the specific facts known to the officers at the roadside detention. Therefore, such action, defendant contends, was impermissible under the self-protection rationale of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968).

The theory purported by the government justifying his alleged arrest at the roadside is that they possessed the requisite probable cause basis for arrest, and therefore the ensuing search of his person producing the American Express card was incidental to that arrest.

In determining the propriety of such a search, Fourth Amendment probable cause requirements must be present. In recent decisions, the U.S. Supreme Court has held that it is imperative that a judicial opinion be supplied with sufficient information to support an independent judgment that probable cause exists for a search or an arrest warrant, before such a warrant may issue. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ It is now settled law that a reviewing Court, when considering a police officer's criteria for probable cause in effecting a warrantless search or arrest, should apply no less stringent a standard than would a magistrate as a prelude to the issuance of a warrant. Whiteley v. Warden, *supra*; United States v. Ventresca, *supra*; Aguilar v. Texas, *supra*; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ Therefore, it is elementary that the officers who detained and searched the defendant at the roadside must have had sufficient information to form the probable cause basis for issuance of a warrant, or the roadside search and ar-

rest of Wilson must be deemed constitutionally impermissible.

The total information available to the officers at the time of their apprehension of the defendant was the radio communique from headquarters based on a phone call from Mr. Mayhaus who asserted that he had cause to believe that a person of defendant's description possibly possessed a stolen credit card. The basis of the information possessed by Mayhaus had been supplied by the unidentified person in the American Express Division of Texaco Oil Company. With this information as the basis for their actions, the three state troopers felt justified, upon viewing a car of the description recited in the phone call and subsequent radio bulletin, in stopping the car and conducting a full search of defendant.

In Whitely v. Warden, *supra,* the Supreme Court held that where a warrant applied for by a local sheriff could not support a finding of probable cause, an arresting officer at a different time and location, absent additional corroborative evidence tending to substantiate the informer's tip, could not effect a constitutionally permissible search and arrest. The additional corroborating information available to, or known by, the arresting officers coupled with the sufficiency of the informer's tip must be an adequate probable cause basis for a warrant to issue or the arrest and incident search are constitutionally defective following the Supreme Court's holding in *Whitley.*

■ We are of the opinion it is still a requirement that an informant's report be "made from direct observations and personal knowledge". United States v. Squella Avendano, 447 F.2d 575, 581 (5th Cir., 1971).

It is obvious that Mr. Mayhaus had no personal knowledge that the credit card was stolen. His report was based on a telephone call to an unidentified person who himself could have had no personal knowledge that the card was stolen.

Assuming *arguendo* that probable cause for arrest existed upon the discovery of the credit card by the officers, ". . . it is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Sibron v. New York, *supra,* 392 U.S. at page 63, 88 S.Ct. at page 1902. Thus, this search cannot be justified as incident to a lawful arrest. Cf. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968).

■ We hold that the arresting officer did not have probable cause to arrest the defendant herein because the radio bulletin relied on was inadequate and the arresting officer had no independent information to corroborate the alleged facts stated in the bulletin.

As hypothetically argued by defense counsel on appeal, another possible justification for the seizure of the credit card from the defendant which would supply probable cause for arrest at a later time or at least the excuse to detain a defendant is the self-protection exception first allowed in Terry v. Ohio, *supra,* but distinguished in the succeeding case of *Sibron, supra.*

■ Despite this exception to the Fourth Amendment warrant requirement found in *Terry, supra,* the Supreme Court made quite clear that in justification of such an intrusion, the police officers must show ". . . specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion". (392 U.S. at page 21, 88 S.Ct. at page 1880). We recognize the need for affirmative police action in protecting their personal security as contemplated by the Supreme Court in *Terry, supra.* But we are of the opinion that this Fourth Amendment exception cannot be applied to the case at bar rendering the search of the defendant constitutionally valid. In this case, specific and articulable facts with respect to the dangerous nature of the defendant or depicting a violent crime committed recently by the defendant were not present.

The police had received no information that the suspect was armed. The

defendant was not violating traffic laws when he was stopped. There was nothing suspicious in his conduct when he was detained by the troopers; he promptly left his car and presented himself to the officers in broad daylight. The defendant was alone. Three police officers were present. Therefore, nothing in the record suggests that this search of the defendant would fall within the *Terry* exception.

In *Sibron, supra,* the police officers approached the defendant, Sibron, in a restaurant and told him to step outside. He did so. An officer followed him and thrust his hand into Sibron's pocket and removed therefrom envelopes containing heroin. The Supreme Court held that this search was in violation of the Fourth Amendment to the United States Constitution and that such evidence must be suppressed.

In *Sibron, supra,* 392 U.S. at page 64, 88 S.Ct. at page 1903, the Supreme Court stated:

"The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."

The *Sibron* Court further stated (392 U.S. at page 65, 88 S.Ct. at page 1904), "Even assuming *arguendo* that there were adequate grounds to search Sibron for weapons, the nature and scope of the search conducted by Patrolman Martin were so clearly unrelated to that justification as to render the heroin inadmissible."

We also rely upon a decision of this Court to substantiate our holding herein. In United States v. Foust, 461 F.2d 328, (7 Cir., 1972) we considered and held unlawful a search and seizure which transgressed the limitations of the Fourth Amendment. There a police officer lifted from a pocket of the defendant, a government check enclosed in an envelope.

In summation with respect to this issue, there is no theory on which the search of defendant Wilson can be sustained as an exception to the Fourth Amendment warrant requirement. As the Supreme Court has stated with respect to this Fourth Amendment requirement most recently in Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1970) reiterating their statement from Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), ". . . searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The facts in the case at bar do not present a situation where one of these exceptions exists.

We hold the act of searching into defendant's pocket when the pat-down did not reveal a potential weapon in that pocket, or elsewhere, constituted a search beyond the permissible scope constitutionally allowed in searches for weapons.

Defendant argues before our Court that the evidentiary product of the search, which we have determined to be illegal, was the basis for securing the warrant to search his car disclosing the shotgun, the object for which he was convicted. Therefore, defendant asserts, "but for" the illegal discovery of the credit card which served as the probable cause basis for the complaint for and issuance of the search warrant for his car, the shotgun would not have been secured as evidence. He thus contends that the evidence of the shotgun uncovered subsequent to the illegal search was tainted as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1961); Silverthorne Lumber Co. v. United States, 251

U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1921).

We agree with the defendant's argument.

Pertinent is the Supreme Court's statement in *Wong Sun, supra,* 371 U.S. at pages 487–488, 83 S.Ct. at page 417:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint'."

In the case at bar, evident from the complaint for the search warrant for Wilson's car, the tainted evidence of the credit card served as the basis for said warrant. It follows that the evidence in the form of the shotgun forming the sole basis for the indictment herein, was discovered from the exploitation of the prior illegality and was not the consequence of some independent source of detection.[2]

Therefore, we are of the opinion that the District Court erred by failing to grant the defense motion to suppress the shotgun. From this determination, consequently, the conviction for possession of the illegal shotgun must be reversed for it was the basis of the statutory violation charged in the indictment.

The Government argues that even if the District Court erred in the ruling denying defendant's motion to suppress the shotgun as "fruit of a poisonous tree", such error was harmless. We disagree. The inclusion of the shotgun into evidence was the entire basis for the indictment. Therefore, it is elementary

that there existed a " . . . reasonable possibility that the improperly admitted evidence contributed to the conviction". Schneble v. State of Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

For the reasons hereinbefore discussed, the judgment of the District Court is

Reversed.

PELL, Circuit Judge (dissenting).

In my opinion, the stolen credit card was taken by the state police officer during the course of a lawful search incident to a lawful arrest based upon probable cause. Since the supposed taint of the initial roadside police activity is, in essence, the basis for the result reached in the majority opinion, I must respectfully dissent from that opinion.

While it is true that the police officer did testify that the original search was for the officer's own protection, motivating factors do not necessarily lend themselves to neat compartmentalization. No doubt most police officers, aware that some of their brothers have either been wounded or killed during the course of such roadside encounters, are, at least in part, motivated by a desire not to suffer a similar fate.

However, prior to his stopping Wilson, this particular police officer had become the possessor of specific knowledge to the effect that an individual answering Wilson's general description and driving the automobile that Wilson was in fact driving had in his possession a stolen credit card.

The officer obviously did not stop Wilson because of any motivation of self-protection. As far as he knew at

---

2. Neither was the information leading to the discovery of the shotgun from an "independent source" rendering evidence admissible in certain situations. *Wong Sun, supra;* nor was the evidence obtained by authorities "without resort to

any clue or knowledge gained from the items unlawfully seized." Standard Oil Co. v. State of Iowa, 408 F.2d 1171, 1177 (8 Cir. 1969). See Durham v. United States, 403 F.2d 190, 196 (9 Cir. 1968).

the time, no specific reason existed for such action. The stop was clearly predicated on the information about the stolen credit card. Wilson was deprived of his freedom of action in a significant way and an arrest was accomplished. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Chapter 38, subsection 107–2(c), Ill. Rev.Stat., 1969, states that: "A peace officer may arrest a person when: . . . (c) He has reasonable grounds to believe that the person . . . has committed an offense."

The crux of the majority opinion appears to be that the officer did not have reasonable grounds, or, putting it another way, in reliance on Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L. Ed.2d 306 (1971), that the officer having no independent personal knowledge, the information from others was not sufficiently reasonably trustworthy to constitute probable cause. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Brinegar v. United States, 338 U.S. 160, 169, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

*Whiteley,* however, in my opinion is not applicable here. There was nothing reflected in the record there as to the reliability of the informer who was the fountainhead of the processes leading eventually to the issuance of a warrant and the arrest. The record in the case before us differs from that in *Whiteley.* A known individual, the assistant manager of a truck stop where Wilson had purchased gasoline, had called the American Express Company and was informed that the card was stolen. Although the identity of the person to whom he talked at American Express is not indicated, it would do violence to reason to assume that upon the assistant manager's calling the telephone number that he had for this very purpose, some interloper would come on the line and purport to speak on behalf of the credit card issuer.

It is at this point, it seems to me, that we must take cognizance of conditions in the present-day marketplace. We would be closing our eyes to the realities of modern commercial practices relating to the widespread use of credit cards—realities which should properly be judicially cognizable—if we were to ignore the extent of thievery and consequent abuse of credit cards. We are all familiar with the store clerk who checks a credit card number against a list prepared by a nameless clerk or an equally anonymous computer showing credit cards that are not to be honored.

For many years we have recognized the reliability of records made in the regular course of business and have accepted such records into evidence for their truth. 28 U.S.C. § 1732. I find this no far-fetched analogy to the present situation. The assistant manager was using the established procedures for the detection of nonviable credit cards, and, as a result of the use of those procedures in the regular course of his business, he learned that the particular card had been stolen. This information was communicated through police channels with specificity regarding the possessor. Reasonable cause existed for the arrest which occurred, and the incidental search was made in part for the very purpose of locating the stolen credit card.

Any more cumbersome procedure when coupled with the mobility of individuals misusing credit cards would mean that, for all practical purposes, the chances of apprehending the misuser would be so minimal as to be virtually nonexistent. An insistence that the "unidentified person" at the American Express Company or any other issuing company have personal knowledge of the theft would impose a condition impossible to meet.

Following the arrest, Wilson continued in custody. Thereafter, pursuant to a search warrant, the sawed-off shotgun was discovered. Although it is true that the shotgun was not specified in the warrant, it is clear that contraband (defined as an item the possession of which in itself is a crime) may be seized in the

course of a legal search. *Cf.* Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The sawed-off shotgun which formed the basis of the offense in the instant case is contraband. See 26 U.S.C. §§ 5841, 5861(d), and 5871. In United States v. Dickey, 428 F.2d 381 (9th Cir. 1970), the defendant's conviction for possessing an unregistered firearm was affirmed, where the gun had been seized during the execution of a search based upon a search warrant issued for the discovery of marijuana.

For the reasons herein set forth, I would affirm the judgment of conviction of Wilson, who obviously was guilty of the crime charged, possession of an unregistered firearm, obviously not a sporting weapon but one primarily associated with lethal purposes. I must also observe that the present factual situation is one of those which is particularly frustrating to law enforcement officials. Here, the police very carefully refrained from searching the automobile, although it was easily accessible at the police station, until a judicial warrant could be obtained.