**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thurlester WILSON, Defendant-
Appellant.**

**No. 71–1764.**

United States Court of Appeals,
Seventh Circuit.

Reargued Jan. 23, 1973.

Decided May 23, 1973.

Kiley, Circuit Judge, filed dissenting opinion in which Duffy, Senior Circuit Judge, joined. Duffy, Senior Circuit Judge, filed dissenting opinion.

Joseph Cohn, E. St. Louis, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Jack A. Strellis, Asst. U. S. Atty., E. St. Louis, Ill., Michael L. Levinson, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and KILEY, FAIRCHILD, CUMMINGS, PELL, STEVENS and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

■ Thurlester Wilson appeals from his conviction for violating 26 U.S.C. §§ 5861(d), 5871, possession of an unregistered firearm. The principal issue raised in this appeal is "whether the sawed-off shotgun which was the basis for the indictment and which was found by police officers during a search for which a warrant had been procured, was tainted by previous police action and conduct which uncovered evidence forming the probable cause basis for the issuance of the search warrant."[1] A panel of this court reversed the conviction by a 2 to 1 vote, holding that the police officer did not have probable cause to make the initial arrest of Wilson. 465 F.2d 1290. On rehearing, we have reached the conclusion that the police did have sufficient probable cause to stop Wilson, and we, therefore, affirm the conviction.

On January 21, 1971, Wilson stopped at a service station near Effingham, Illinois, on Interstate Highway 57. While there he charged a purchase of less than $25.00 to an American Express card issued to William Kotinas. Because the purchase was less than $25.00, no authorization was needed from American Express. He then asked to charge purchases amounting to approximately $100.00. A woman cashier called "American Express to get verification from the number." However, Wilson asked to speak to the American Express people and after a short conversation indicated to the cashier that he no longer wished to make the purchases. When the assistant station manager, Robert Mayhaus, was informed of this he in turn called American Express via a Texaco company number and was informed that the credit card Wilson had sought to use was listed as stolen.

Mayhaus then called the highway patrol and informed them "that a man had made a purchase of gasoline at our station and had used a credit card, and that we didn't check on it, you know, because it was for an amount under twenty-five dollars; and then he attempted to make purchases in the store for over twenty-five; and we called; and at this time I was informed that it was a stolen card." A police bulletin was issued: "a red Ford Torino, 1970, with license plates HC [8196] . . . one colored male, had in his possession an American Express credit card which was stolen; and he had asked the direction to St. Louis; and it was passed at the Roadway Truck Stop in Effingham, Illinois, where he had purchased gas." Wilson was stopped by three officers. He was "patted-down" by Trooper James Williams, who, during the course thereof, reached in Wilson's pocket and withdrew the American Express card. Subsequently, another officer, on the basis of the fact that Wilson had in his possession a stolen credit card, applied to a state court judge for a warrant to search Wilson's automobile for other credit cards and papers which might have been stolen from Kotinas. The search warrant was issued. During the course of the search of the car the sawed-off shotgun was found.[2]

■ Prior to trial, Wilson moved to quash the search warrant and suppress the evidence deriving from the warrant. Several of the grounds advanced to support the motion are not relevant here. However, one of the grounds was that "[t]he issuing Judge incorrectly found probable cause for the issuance of the warrant in the affidavit(s)." This, of course, is not the same as alleging that

1. United States v. Wilson, 465 F.2d 1290, 1292 (7th Cir. 1972).

2. Although not specified in the search warrant, the shotgun was contraband and was properly seized if taken in the course of a legal search. See discussion in dissenting opinion, United States v. Wilson, *supra* at 1295–1296.

the police did not have probable cause to stop Wilson initially. The two contentions are, nonetheless, interrelated since what Wilson was apparently attempting to show was that the fact alleged in Trooper Weems' complaint for a search warrant was based purely on the radio bulletin and that in turn was based only on the call from Mayhaus. Thus, we are led back to the question of whether Mayhaus' call standing alone constituted probable cause to believe that Wilson had a stolen credit card in his possession. It is unfortunate that Wilson's motion was not clear on this point. Because of the lack of specificity in Wilson's challenge in the pre-trial hearing, the Government did not question Mayhaus closely as to the total content of the call to the police. Indeed, when the Government attempted at the suppression hearing to develop specific information from Mayhaus which would have reflected upon the basis of his information that the card was stolen, the effort was thwarted by the sustaining of Wilson's objections that the evidence was hearsay. The testimony of Trooper Williams indicates that Mayhaus conveyed far more information to the state police than the answers he gave in the pretrial hearing would reflect. Because Wilson did not clearly raise in the trial court the ground which he now claims requires reversal of his conviction, we hold that he is not in a position to challenge any reasonable inferences from or any claimed lack of greater specificity in Mayhaus' testimony.

■■■ The warrantless search of Wilson at the time of his arrest, during which search the credit card was found, was valid only if it was a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Even if such a "pat-down" could have been justified by

fear that one who allegedly tried to use a stolen credit card might be armed, Trooper Williams' reaching into Wilson's pockets and extracting the credit card went beyond the permissible scope of a non-arrest "pat-down" for weapons. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The fact that the arrest was made pursuant to a police bulletin does not add or detract from the necessity of probable cause as an underlying requirement for an arrest. Whiteley v. Warden, 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L.Ed.2d 306 (1971). For this arrest to be valid, the officer who caused the radio bulletin to be issued must have had sufficient information to establish probable cause to believe that the person driving the specified car had committed a crime.[3] Further, if the police had probable cause, the facts of this case—particularly that the appellant was driving away from the scene of the alleged crime—provide sufficient exigent circumstances to relieve the police of the requirement of obtaining a search or arrest warrant before stopping him. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■■■ The test for determining whether probable cause exists for the issuance of a search warrant, being the same standard applicable to a warrantless arrest,[4] is set out in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964): "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that

3. As Wilson's counsel stated at reargument: "What I do contend is that the telephone conversation Mr. Mayhaus had with the police dispatcher by analogy must be comparable to the information given by a complainant to a magistrate to obtain either a warrant for search or a warrant for arrest."

4. McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

the informant . . . was 'credible' or his information 'reliable.'" The *Aguilar* two-pronged test was applied in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in which the Supreme Court emphasized that the affiant must make more than a conclusionary assertion concerning the informant's reliability and that the tip must contain supporting facts to show why the informer concluded that the defendant was committing illegal acts.

We turn then to the question of whether, at the time the police bulletin was issued, the police had sufficient information to establish probable cause under the *Aguilar-Spinelli* test. From the record before us, which, because the suppression hearing was only tangentially related to this issue, is not as complete as might be desired, the only evidence that the police had at that crucial time was the call from Robert Mayhaus. The case, therefore, hinges on the narrow factual question of whether that call was sufficient under the two-pronged probable cause test.

█ As to the first prong of the test, the reliability of the informant, we know that Mayhaus informed the police as to where he worked since it was part of the radio bulletin received by Trooper Williams.[5] The fact that Mayhaus was not a paid informer is significant. A citizen in the position of Mayhaus would ordinarily not have had the opportunity to establish a prior history of reliability for tips to the police. On the other hand, as then Circuit Judge Burger stated in Brown v. United States, 125 U.S. App.D.C. 43, 365 F.2d 976, 979 (1966), "[a]lthough the police could not here judge the reliability of the information on the basis of past experience with the informant, . . . the victim's report has the virtue of being based on personal observation . . . and is less likely to be colored by self-interest than is that of an informant." A serious charge, such as that made by Mayhaus,

when volunteered by an identified party in the circumstances before us, carries with it indicia of reliability of the informant. *See, e. g.,* Adams v. Williams, 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). That reliability was reinforced by the "internal content" of the call which "intrinsically proves the truth of the 'responsible' citizen's word." United States v. Roman, 451 F.2d 579, 581 (4th Cir. 1971), cert. denied, 405 U.S. 963, 92 S.Ct. 1171, 31 L. Ed.2d 239 (1972). In United States v. Unger, 469 F.2d 1283 (7th Cir. 1972), this court adopted the above language in upholding a search warrant the affidavit for which omitted completely any allegation as to the reliability of the informant. We need not go so far in the present case. *Cf.* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L. Ed.2d 723 (1971).

*Aguilar* also requires some knowledge of the underlying facts to support the conclusion that a crime has been committed. Although Mayhaus' testimony is sparse, we think it sufficient in light of contemporary business dealings of which every citizen is aware. As noted above, Mayhaus testified that "we called; and at this time I was informed that it was a stolen card." Very few individuals today are not familiar with the ritual associated with credit card purchases. A book of numbers is consulted, and if the purchase is over a moderate sum, a call is made to confirm credit. Thus, although Mayhaus' explanation of how he knew the card tendered by Wilson was stolen may have been truncated, it was sufficient in its business context to show the police "the underlying circumstances from which the informer concluded that" Wilson had a stolen credit card. Spinelli v. United States, *supra*, 393 U.S. at 416, 89 S.Ct. at 589.

Wilson makes a further attack on the sufficiency of the information available to the police in that he contends that Mayhaus did not tell the police whom he

---

5. When the case was reargued, counsel for Wilson conceded that Mayhaus must have identified himself to the police.

called. As noted above, Mayhaus' testimony was abbreviated, in part because of Wilson's objections to questions put to Mayhaus and in part because of lack of emphasis on the particular point now under consideration. The police bulletin, however, reflects the fact that Mayhaus specified that it was a stolen American Express card. The only logical inference that can be drawn from the statement "we called" in light of modern credit practices is that Mayhaus called American Express or some agent of American Express which was authorized to approve substantial credit purchases.

◼ Finally, Wilson attacks the reliability of the information furnished by American Express. Initially we are confronted with the fact that the information imparted to the police was hearsay based on hearsay. If hearsay information is acceptable in arriving at probable cause, and it is, Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960), then hearsay based on hearsay should be acceptable as long as the police officer has sufficient information so that both levels of hearsay meet the two-pronged test spelled out in *Aguilar*. Since we have held that the hearsay information involved in Mayhaus calling the state police was sufficient under *Aguilar*, assuming that he gave the police an accurate summary of the telephone call to American Express (and we make this assumption because Mayhaus had been determined credible under *Aguilar*), we need only determine whether the American Express report was itself sufficiently credible under *Aguilar*.

There is no indication that Mayhaus had any idea of the identity of the person to whom he was speaking at American Express. He, in a routine manner following ordinary business procedures applicable to this particular type of transaction, had called Texaco, which had referred the call to American Express. The call was placed to a number provided for this very purpose. While it is required that "if the informant came by the information indirectly," he must explain "why his sources were reliable," Spinelli v. United States, *supra*, 393 U.S. at 416, 89 S.Ct. at 589, we have no difficulty finding reliability, not in the fact that the person to whom Mayhaus talked had personal knowledge of the theft, but rather in the fact that such person was one functioning part of a large business mechanism established for the very purpose of collating and disseminating this type of information to customers who regulated their daily business affairs in reliance thereon.

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L.Ed. 1879 (1949). The Government argues that the hearsay of the American Express operator meets the *Aguilar* test because it is comparable to the business records exception to the hearsay rule. There is merit in the comparison. For many years we have recognized the reliability of records made in the regular course of business and have accepted such records into evidence for their truth. 28 U.S.C. § 1732. Furthermore, Rule 406 of the Proposed Federal Rules of Evidence makes "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses . . . relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

In sum, we are of the opinion that the mechanism of today's system of credit confirmation is sufficient to support the type of reliability and credibility required by *Aguilar*. When the police were told that Mayhaus checked with American Express and was told the card was stolen, they knew that there was a very high degree of reliability in the

fact that the card was actually reported as stolen. Furthermore, that a card was reported as stolen supports the conclusion that the use of the card was either use of a stolen credit card or else, at least, use without the permission of the owner, which would also be a crime. Thus, the second requirement of *Aguilar* is met by the information conveyed to Mayhaus by American Express.

▪▪▪ In his original brief, Wilson also argued that this conviction should be reversed because the Assistant United States Attorney who tried the case purposefully introduced at trial evidence concerning other crimes allegedly perpetrated by Wilson for which he was not then being tried, *e. g.*, armed robbery of Kotinas and fraud in using Kotinas' stolen credit card. Wilson argued in the district court that such evidence was irrelevant and highly prejudicial since the Supreme Court in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), held that 26 U.S.C. § 5861 does not require proof of specific intent or knowledge that the firearm was unregistered.

As the Government pointed out, *Freed* did not eliminate the need to prove possession. Since the car Wilson was driving was not his but was rented, the Government argued that proof that Wilson had rented the car (by showing that he had done it with a credit card stolen from Kotinas) was essential to establish that he had in fact possessed the illegal firearm. Since the evidence was relevant to show knowing possession, we find no reversible error in its admission. Nor did Wilson ask for any partial limitation of the Government's inquiry into this area—a request which might have met with more favor from the district court. Finally, we note that the district court, in instructing the jury, did state that Wilson was on trial only for the crime charged and that the jury should not consider whether he was guilty of any other crime. As to two other incidents in which objectionable answers were made by witnesses, we note that the testimony was immediately objected to and those objections were sustained with the material ordered stricken from the record. Moreover, as to all of the alleged prejudicial statements, we observe that they would qualify as harmless error under the rule of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), in light of the overwhelming evidence against the defendant on all material issues.[6]

For the reasons given hereinbefore, the judgment of the district court is affirmed.

Affirmed.

KILEY, Circuit Judge, with whom DUFFY, Senior Circuit Judge, joins (dissenting).

I respectfully dissent.

The focus in determining probable cause for arrest of Wilson is upon the information Mayhaus actually gave Sergeant Williams. Whiteley v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

I agree that a reasonable inference from Trooper Williams' testimony at the suppression hearing is that Sergeant Williams[1] was told by Mayhaus that the American Express Company was called. Otherwise the trooper could not have known that fact at the time of Wilson's arrest. I agree also that if Sergeant Williams had sufficient information upon which to make the judgment that Wilson probably possessed a stolen credit card, the rule of Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), applies to justify the warrantless arrest. And finally I agree that the question of Sergeant Williams' information of the theft of the card is the

---

6. We note that the district court's jury instructions erroneously, in light of *Freed*, required the Government to prove specific intent and that even that heavier burden was met.

1. Sergeant Williams did not testify at the hearing.

vital point in determining whether probable cause existed.

The majority opinion applies the two-prong *Aguilar* test—underlying circumstances and credibility and reliability—in determining that the admitted hearsay-upon-hearsay information given to Sergeant Williams by Mayhaus was sufficient to render valid the otherwise per se unreasonable arrest. I think the opinion establishes that there is sufficient showing of underlying circumstances upon which Sergeant Williams could in part base his judgment of probability. My question is with respect to the opinion's decision under the test of credibility and reliability.

The majority bases its finding of reliability, first, on the basis of Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976, 979 (1966), since "the victim's report has the virtue of being based on personal observation. . . ." In *Brown* the court apparently assumed, for the purpose of decision, that the informant was the victim of the armed robbery and that the informant personally observed the robbery and the criminal. Here Mayhaus testified at the hearing that he could not identify Wilson, did not serve him at the gas station or prepare a sales slip for the attempted purchase of merchandise exceeding $25.00. Nor was Mayhaus sure that he observed Wilson making a telephone call.

The second basis for the court's finding of reliability is the authority of United States v. Roman, 451 F.2d 579, 581 (4th Cir. 1971), cert. denied, 405 U.S. 963, 92 S.Ct. 1171, 31 L.Ed.2d 239 (1972). The majority states that the "internal content" of Mayhaus' call to Sergeant Williams "intrinsically prove[d] the truth of the 'responsible' citizen's word." In *Roman*, however, the statements of the affiant so clearly connected Roman with the stolen Chevrolet that it was not necessary that the affidavit state the experiential basis upon which the affiant established the relia-

bility of the informant. Here there was of course no affidavit and no claim, at the suppression hearing, that the "internal content" of Mayhaus' call to Sergeant Williams "intrinsically prove[d] the truth" of Mayhaus' statement. I cannot find that the majority opinion meets the *Aguilar* test of reliability.

The majority opinion rejects Wilson's attack upon the reliability of the information furnished by American Express to Mayhaus. This is the admitted hearsay-upon-hearsay. The opinion considers first whether the American Express report was itself sufficiently credible under *Aguilar*, finding under the *Spinelli* rule "no difficulty" in rejecting the attack, because the unnamed, unidentified person to whom Mayhaus talked at American Express was "one functioning part of a large business mechanism," the very purpose of which is gathering, processing and disseminating this type of information to business customers who regulate their affairs in reliance on the mechanism. I think at best this notion supports the value of the mechanism as reliable for business purposes. I am not persuaded it suffices for the purpose of overcoming the per se unreasonableness of a warrantless arrest of a human being. "[W]hen a search is based on a magistrate's rather than a police officer's determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant.'" *Aguilar supra* at 111, citing Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960).

The majority accepts the government's argument that the hearsay of the American Express information meets the *Aguilar* test because it is comparable to the business records exception to the hearsay rule. I question the validity of the comparison.

It is true that 28 U.S.C. § 1732 and Proposed Federal Rule of Evidence 406 both provide for the admissibility of cer-

tain kinds of business records.[2] The records are admissible into evidence under either the statute or the rule, however, only if they meet certain prerequisites.

One prerequisite of the rule for admissibility is that the information on which the records are based be supplied by a person acting routinely, under a duty of accuracy, with employer reliance on the result, or in short "in the regular course of any business." *See* Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930); Palmer v. Hoffman, 318 U.S. 109, 111–115, 63 S.Ct. 477, 87 L.Ed. 645 (1943), rehearing denied, 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163; Annot., 8 A.L.R. Fed. 919 (1971). The information compiled in whatever manner by American Express is not supplied by such persons as described above.

Moreover, there is no evidence in this record that the information compiled by American Express has proved accurate or reliable in the past, but only that the information exists for whatever·business purpose it may be desired. Neither is there anything to show that the information it gathers as to "stolen" credit cards is reliable.

I recognize that after the *Aguilar* and *Spinelli* decisions the requirements for probable cause in the Supreme Court decisions in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), appear less stringent than those in *Aguilar* and *Spinelli*. In *Adams,* however, the Court dealt with the question of reasonable cause for an officer to pat down a suspect, and did not deal with the question of probable cause. In *Harris* the Court found that the informant's reliability was adequately established where the police knew the informant's reputation and said so. Mayhaus, however, admitted that this was the first call he had ever made to the police headquarters.

If we place upon personal privacy the value that we say we do, it is important that decisions with respect to warrantless arrests and searches use great care in weighing the private interests of innocent persons at true value in determining probable cause questions. In retrospect, of course, Wilson was not a good man. Before his arrest, however, he was legally innocent. In my view, Wilson's privacy interests are not adequately considered in the majority opinion.

I conclude that there was not sufficient showing of reliability of the information that the credit card here was stolen, and for that reason I cannot join the majority. I would reverse.

DUFFY, Senior Circuit Judge (dissenting).

I agree with and concur in Judge Kiley's dissenting opinion. For the reasons stated therein and also for the reasons set forth in my original opinion in this case, I would reverse the judgment of conviction.

---

**2.** We are not talking of American Express Company's records being introduced into evidence. We are talking of what someone at the Company's office told Mayhaus was on a record.