UNITED STATES of America

v.

George L. FOOSE.

Crim. No. 75-209.

United States District Court,
W. D. Pennsylvania.

Sept. 24, 1975.

Alexander Lindsay, Jr., Asst. U.S. Atty., Pittsburgh, for plaintiff.

James K. O'Malley, Makoroff, O'Malley & Safier, Pittsburgh, Pa., for defendant.

OPINION AND ORDER

SNYDER, District Judge.

This Defendant has filed a Motion to Suppress evidence, Methaqualone (hereinafter "M"), seized in the execution of a search warrant allegedly issued without probable cause. The Motion will be denied.

On April 11, 1975, United States Magistrate William L. Glosser issued search warrants for the premises at 6001 Sixth Avenue and 1614 Second Avenue, Altoona, Pennsylvania, on the Affidavit of Roy L. Upton, Special Agent of the Drug Enforcement Administration. The Affidavit (Appendix A hereto) set forth *inter alia* as follows:

"On March 26, 1975, a confidential informant advised the affiant that an individual by the name of John had offered to provide him with large quantities of methaqualone. According to the informant John identified his source for methaqualone as a clandestine laboratory in the Altoona, Pennsylvania area. The informant further noted that John said the methaqualone would not be available until approximately the second week of April. In addition, the informant noted that John said the source operated a photographic supply business in Altoona and obtained at least some of the chemicals from the Kodak company located in New York. John further advised the informant that one of the main ingredients in the manufacturing of methaqualone is N–Acetylanthranilic acid and that it is only available from Kodak in New York. The informant also was advised by John that the manufacturer had ordered enough N–Acetylanthranilic acid to produce 125 pounds of methaqualone once he *received* all of the precursors and that the manufacturer expected to receive this substance on or around April 10, 1975.

In addition to the above, the informant produced a list which he said

he received from John and which John stated contained the chemicals necessary for the manufacture of methaqualone. 1. N–Acetylanthranilic acid, 2. toluene, 3. O–Toludine, which he listed as the second most important ingredient, 4. phosphorus trichloride, 5. sodium carbonate 6. ethyl alcohol, 7. concentrated sulfuric acid and 8. sodium chloride [table salt].

  *   *   *   *   *   *

The informant again contacted the affiant on April 2, 1975. During this discussion the informant indicated that John had contacted him (informant) and advised that the quantity to be manufactured by John's source had been increased by approximately 200 pounds. The informant then stated that he placed an order for ten pounds with John.

On April 9, 1975, the informant again contacted the affiant and advised that John had again contacted him (informant). The informant advised that he had learned from John that the chemist had incurred some difficulty in paying for some of the chemicals and thus would not be producing the 200 pounds of methaqualone. The informant was advised by John that the manufacturing would now be done in a two step process. That initially approximately 60 pounds would be manufactured. John told the informant that there was a prior order for this quantity and thus he would not be able to deliver to the informant. He stated that, however, upon receipt of the money for the 60 pounds the chemist would then acquire the additional 100 kilograms of N–Acetylanthranilic acid and then manufacture additional methaqualone. Finally, John told the informant that the chemical processing would definitely occur between April 10 and 13." [Sic, errors in original]

The Affidavit further set forth that Agent Upton determined on March 27, 1975 that Professional Photographic Services, Inc. (hereinafter PPSI) of Altoona, Pennsylvania had ordered 35 kilograms of N–Acetylanthranilic acid which Eastman Kodak was in the process of making with an expected completion date of April 7, 1975. The chemical would then be tested on April 8th and shipped on April 8th or 9th, with an anticipated delivery date of April 10, 1975. The Agent also learned from Kodak that PPSI had purchased 35 kilograms of N–Acetylanthranilic acid and 55 gallons of O–Toluidine in December of 1974, and 75 kilograms of N–Acetylanthranilic acid in February of 1975.

The Rochester, New York Office of the Drug Enforcement Administration advised Agent Upton that it was a Leroy Foose of P. O. Box 1934, Altoona, Pennsylvania, who had placed the orders on behalf of PPSI, and that Kodak received checks signed by George L. Foose indicating his address as 6001 Sixth Avenue, Altoona, Pennsylvania 16602. The Rochester Office had also received information from Kodak that Leroy Foose had given them (Kodak) telephone numbers of 942–5762 (an unpublished number listed to George Foose at 6001 Sixth Avenue) and 944–1264 (listed to James J. Foose at the same address).

Robert Henderson, a chemist with the Drug Enforcement Administration, confirmed that the chemicals which John told the informant were necessary, were in fact required for the manufacture of "M". Agent Upton learned through Robert Liecht of Kodak that it (Kodak) was the only firm manufacturing N–Acetylanthranilic acid, and that the only legitimate use thereof was in the development of photographs. Kodak also advised that PPSI had increased its order from 35 kilograms to 110 kilograms of N–Acetylanthranilic acid and that Kodak had then contacted George Foose and advised him they would have to receive payment before delivery would be made. Foose indicated an inability to pay the full amount and said he would pay for 10 kilograms which he requested be shipped, and asked that the remainder of the order be held.

The Agents of the Rochester Office arranged for delivery of the 10 kilograms in a controlled situation, monitored by Agent Upton. George Foose left his residence at 6001 Sixth Avenue in Altoona on April 11, 1975 and went directly to the Duncansville Office of United Parcel Service and picked up the package containing the 10 kilograms of N–Acetylanthranilic acid. He then went with the package to a local department store where he purchased two (2) two-gallon gasoline cans. Shortly thereafter, Foose returned to 6001 Sixth Avenue and syphoned a liquid into the newly purchased gasoline cans. He then took the package of acid and the gasoline cans and proceeded to 1614 Second Avenue, taking the acid and the filled gasoline cans inside.[1]

## DISCUSSION

The principles applicable to the use of informants in the determination of probable cause are set out in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964) and applied in *Spinnelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). As thoroughly discussed in *DeAngelo v. Yeager,* 490 F.2d 1012 (3d Cir. 1973), an affidavit submitted in support of the issuance of a search warrant may be based on hearsay information, but "the magistrate must be informed of some of the underlying circumstances from which the informant concluded" that evidence of a crime was to be found in the place to be searched. (378 U.S. at 114, 84 S.

Ct. at 1514). *Aguilar* holds that unless there are sufficient facts from which inference can be made, the Magistrate cannot authorize a search warrant for it would be "drawn 'not by a neutral and detached magistrate' as the Constitution requires, but instead, by a police officer 'engaged in the competitive enterprise of ferreting out crime' . . . or, . . . by an unidentified informant." (378 U.S. at 115, 84 S.Ct. at 1514, 12 L. Ed.2d at 729). *See also United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Recognizing the deficiency with respect to the lack of underlying circumstances and the reliability of the information, the Government argues that the informant's statement is adequately corroborated and substantiated as approved in *Draper v. United States,* 358 U.S. 160, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), by the affiant Agent's investigation as set out in his affidavit.[2] We believe the Government's reliance on *Draper* and its progeny *United States v. Simpson,* 453 F.2d 1028 (10th Cir. 1972), is well founded. In *Draper,* the affiant verified that the man he saw had the physical attributes, was wearing the precise clothing, and was carrying the brown zipper bag that the informant had described. He alighted from one of the very trains, from the very place stated by the informant and started to walk at a "fast" pace toward the station exit. The Supreme Court held that the affiant had verified every facet of the information given, except whether the

---

1. The search of 6001 Sixth Avenue yielded nothing; however, at 1614 Second Avenue, the Agents recovered the following: "1.) one glass stirring rod with white residue on it 2.) White powder in a 2 foot cylindric container with Eastman Kodak on it 3.) Liquid residue in 2 gasoline cans 4.) Liquid in a gray metal drum with Eastman Kodak on it 5.) Liquid in a brown amber bottle Fisher Scientific Written on it 6.) Brown Crystalline substance on two separate brown bottles with peuchlorosniline written on it 7.) 1000 ml. glass beaker 8.) 250 ml. glass pyrex tube 9.) 1000 ml. glass beaker 10.) One electric motor with Jumbo Stirrer in it 11.) One metal stirrer 12.) Brownish clear plastic tubing with Carnegie Equipment written on it 13.) One dexo-gram scale 14.) One heater blower Serial # 1174 15.) One Chemistry and Physics handbook 16.) One spiraled, flowered colored notebook"

2. The evidence Agent Upton obtained by independent investigation provides the probable cause to issue the warrant. For this reason, the underlying circumstances by which the informants received their information or their reliability need not be shown. *Cf. United States v. Wilson,* 479 F.2d 936 (7th Cir. 1973).

defendant had accomplished the mission and had the three ounces of heroin on his person (or in his bag). Mr. Justice Whittaker speaking for the Court stated as follows (358 U.S. at 313, 79 S.Ct. at 333, 3 L.Ed.2d at 332):

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States, supra* (338 U.S. 160, àt 175, 69 S.Ct. 1302, 93 L. Ed. 1879). Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 555, 39 ALR 790."

As stated in *Jones v. United States*, 362 U.S. 257, at 269, 80 S.Ct. 725, at 735, 4 L.Ed.2d 697, at 707 (1960):

"In testing the sufficiency of probable cause for an officer's actions even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct obervations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge."

Testing the Affidavit in the instant case in a common sense fashion and without technical requirements that have no proper place in this evaluation, the Affidavit was sufficient so that the Magistrate could properly conclude there was probable cause for the issuance of the warrant.

The Informant's relating of the amount and the time of the initial delivery of the chemical, the reporting of the reduction of the amount and the reasons therefor, corroborated by the Agent's investigation with Kodak, provided detailed information to justify issuing the warrant based on probable cause. The actions of George Foose at the "controlled" delivery leading to the presence of the liquid at both addresses on April 11, 1975, fully substantiated the issuance of the warrant as to both addresses, and the Motion must therefore be denied.

An appropriate Order will be entered.

### APPENDIX A

### AFFIDAVIT

On March 26, 1975, a confidential informant advised the affiant that an individual by the name of John had offered to provide him with large quantities of methaqualone. According to the informant John identified his source for methaqualone as a clandestine laboratory in the Altoona, Pennsylvania area. The informant further noted that John said the methaqualone would not be available until approximately the second week of April. In addition, the informant noted that John said the source operated a photographic supply business in Altoona and obtained at least some of the chemicals from the Kodak company located in New York. John further advised the informant that one of the main ingredients in the manufacturing of methaqualone is N–Acetylanthranilic acid and that it is only available from Kodak in New York. The informant also was advised by John that the manufacturer had ordered enough N–Acetylanthranilic acid to produce 125 pounds of methaqualone once he received all of the precursors and that the manufacturer expected to receive this substance on or around April 10, 1975.

In addition to the above, the informant produced a list which he said he received from John and which John stated contained the chemicals necessary for the manufacture of methaqualone. 1. N–Acetylanthranilic acid, 2. toluene, 3. O–Toludine, which he listed as the second most important ingredient, 4. phosphorus trichloride, 5. sodium carbonate 6. ethyl alcohol, 7. concentrated sulfuric acid and 8. sodium chloride [table salt].

In connection with this discussion the informant was apprised by John that the price per pound of methaqualone would be $800.00. The informant also noted that John provided him with a sample which he delivered to the affiant. The affiant subsequently sent this sample to the DEA Northeast regional laboratory, New York, New York for analysis. On April 11, 1975 supervisory chemist Robert Bianchi advised the affiant that the sample was methaqualone, with a purity of 79%.

On March 27, 1975, the affiant contacted Mr. Robert Liecht, Eastman Kodak Corporation, Rochester, New York. Mr. Liecht advised the affiant that Professional Photographic Services, Inc. (herein after referred to as PPSI), Altoona, Pennsylvania had ordered 35 kiliograms of N–Acetylanthranilic acid on March 18, 1975. Mr. Liecht further advised that the Kodak Company was in the process of making the N–Acetylanthranilic acid and the expected completion date was April 7, 1975. He indicated that the expected completion date was April 7, 1975, that the chemical would be tested on the 8th and shipped on the 8th or 9th with an anticipated delivery date of April 10, 1975. According to Mr. Liecht PPSI had purchased 35 kiliograms of N–Acetylanthranilic acid and 55 gallons of O–Toluidine in December, 1974. (As noted above O—Toluidine was identified by John as the second most important ingredient in the manufacturing of methaqualone. The affiant was also advised by Robert Henderson, a chemist employed by the Drug Enforcement Administration at the Regional Laboratory in New York City, that O–Toluidine is the second most important ingredient in the manufacturing of methaqualone.) Finally, Mr. Liecht indicated that PPSI had also purchased 75 kiliograms of N–Acetylanthranilic acid in February, 1975.

In early April 1975 a subpoena was served on the Eastman Kodak Corporation by agents of the Rochester, New York—Drug Enforcement Administration Joint Task Force. The affiant has been advised by Detective Donald Miglioratti of the Rochester, New York—Drug Enforcement Administration Joint Task Force that a Leroy Foose, P. O. Box 1934, Altoona, Pennsylvania, had placed the orders referred to above on behalf of PPSI. Miglioratti indicated that Eastman Kodak had received checks signed by George L. Foose and that the checks had the address of 6001 Sixth Avenue, Altoona, Pennsylvania 16602. Miglioratti also related that the Eastman Kodak records reflect that Foose gave the following telephone numbers to Eastman Kodak, 814/942–5762 and 814/944–1264. The affiant has checked with the Bell Telephone Company and learned that the first number is an unpublished number listed to George Foose, 6001 Sixth Avenue and the second number is listed to a James J. Foose at the same address.

The affiant has also discussed the manufacture of methaqualone with Robert Henderson, as noted, a chemist with the Drug Enforcement Administration. In this discussion the affiant related the list of chemicals provided by the informant as these which had been provided to him by John and which were represented as being the chemicals necessary for the production of methaqualone. Mr. Henderson agreed that these were the chemicals necessary for the manufacture of methaqualone. Henderson also advised that N–Acetylanthranilic acid was the most necessary ingredient in the manufacture of methaqualone.

In my discussion with Mr. Liecht I was advised that Kodak is the only firm which manufactures N–Acetylanthranilic acid and that the only legitimate use he was aware of was in the development of photographs. He indicated further, however, that only a small quantity was necessary in connection with photographic development.

In another discussion with Mr. Liecht the affiant was advised that PPSI had increased its order for N–Acetylan-

thranilic acid from 35 kiliograms to 110 kiliograms. The affiant has also learned that when the N–Acetylanthranilic acid was ready Eastman Kodak contacted Mr. Foose and advised him that they would need payment before delivery. Foose then indicated an inability to pay for the entire order and advised that he would pay for 10 kiliograms and requested that it be shipped and also requested that the other 100 kiliograms be held.

In connection with agents of the Rochester, New York Drug Enforcement Administration office the 10 kiliograms of N–Acetylanthranilic acid was delivered in a controlled situation. It was examined by agents in New York and its delivery was monitored by the affiant. At 10:10 a. m. on 4/11/75 the affiant personally delivered the ten kiliograms of N–Acetylanthranilic acid to Terry McKendricks, manager of the Altoona branch of United Parcel Service, located in Duncansville, Penna. He subsequently notified Foose's mother that the above referred to acid had been received by UPS and Foose could pick said acid up at any time.

On 4/11/75 agents of the Drug Enforcement Administration including the affiant made the following observations in the Altoona, Penna. area. At approximately 12:20 p. m. George Foose left his residence at 6001 Sixth Ave., Altoona, Penna. and traveled directly to the Duncansville UPS terminal. Approximately 12:30 p. m. George Foose left the UPS terminal with the package containing the aforesaid acid. George Foose then traveled to a local department store where he purchased two two gallon gasoline cans. At one p. m. George Foose returned directly to his residence at 6001 Sixth Ave. During the next ten minutes, George Foose was observed by the affiant while at the garage, at the extreme left door, syphoning

a liquid from two separate 55 gallon drums into the newly purchased gasoline cans, and also into a one gallon bottle he had retrieved from his house. At approximately 1:10 p. m. George Foose left his residence and proceeded to 1614 Second Ave., Altoona, Pennsylvania. He then took the ten kiliogram package of the aforesaid acid, the two newly purchased filled gasoline cans, and the one gallon filled bottle into 1614 Second Ave.

The informant again contacted the affiant on April 2, 1975. During this discussion the informant indicated that John had contacted him (informant) and advised that the quantity to be manufactured by John's source had been increased by approximately 200 pounds. The informant then stated that he placed an order for ten pounds with John.

On April 9, 1975, the informant again contacted the affiant and advised that John had again contacted him (informant). The informant advised that he had learned from John that the chemist had incurred some difficulty in paying for some of the chemicals and thus would not be producing the 200 pounds of methaqualone. The informant was advised by John that the manufacturing would now be done in a two step process. That initially approximately 60 pounds would be manufactured. John told the informant that there was a prior order for this quantity and thus he would not be able to deliver to the informant. He stated that, however, upon receipt of the money for the 60 pounds the chemist would then acquire the additional 100 kiliograms of N–Acetylanthranilic acid and then manufacture additional methaqualone. Finally, John told the informant that the chemical processing would definitely occur between April 10 and 13.

/S/ Roy L. Upton S/A

ROY L. UPTON, Special Agent
Drug Enforcement Administration