STATE of Missouri, Respondent,

v.

Giles CHAPMAN, Appellant.

No. 62648.

Supreme Court of Missouri,
Division No. 2.

Feb. 9, 1982.

Motion for Rehearing and to Transfer to
Court En Banc Denied March 9, 1982.

Kenneth R. Singer, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES K. PREWITT, Special Judge.

Appellant was convicted of first degree murder and sentenced to life imprisonment. The only substantial evidence linking appellant to the murder was a tape recorded statement he gave the police. He repudiated the truth of it at a hearing on his motion to suppress and at trial, saying he admitted participating in the murder "[u]nder fear" because of threats made by the police. Appellant offered evidence that he was elsewhere when the victim was shot. He contends the trial court erred: (1) in allowing the jury to hear the statement because it was the result of an arrest without probable cause, and (2) in denying his request for a mistrial when a police officer testified that he told appellant that the police had information that while appellant held the victim, O'Neal Saunders, appellant told an accomplice to shoot Saunders.

On October 17, 1979, between the hours of 8:00 and 9:00 p. m., three black males were seen walking in a westerly direction on the south side of the 4700 block of Martin Luther King Drive in the city of St. Louis. Two of the males were approxi-

mately the same height and one was considerably taller. Nearby O'Neal Saunders was working on an automobile parked next to the south curb. A shot was heard and the three males ran from the street and went down an alley. None of the witnesses who saw the three identified appellant. Saunders went across the street to an auto supply store where he collapsed and died. The cause of death was a gunshot wound.

On the evening of the shooting the police received a call from an unidentified person who stated that he would give them information concerning the shooting if he did not have to testify or give his name or address. He met with the police and told them that before the shooting he had been with appellant, appellant's brother, and Larry Hill, and that the three had discussed committing a robbery. The informant said he was about half a block away from them when he saw appellant and Hill walk up to a man who was working on an automobile; that Hill placed a revolver at the man's head; that the man tried to run away; that appellant grabbed him and said to shoot him; that Hill said to let him go; that appellant did and Hill shot him. The informant then showed the police where the three lived. The police officers stated that they did not know the informant and were unaware of any previous information which he may have given the police.

On October 25, 1979, appellant was arrested. Appellant's statement, given shortly after noon that day, said that he and Larry Hill attempted to rob Saunders and when he resisted, Hill shot him. Appellant and Hill were approximately the same height. Appellant's statement said that just previously Hill had told appellant's brother that he should not participate in the robbery because he was too tall "to try to do anything".

▆▆ Appellant contends that the information received by the police officers was insufficient to establish probable cause on which to arrest him. The existence of probable cause depends upon the facts of each case and is determined by factual and practical considerations on which reasonable and

prudent men would act. *State v. Whorton*, 487 S.W.2d 865, 868 (Mo.1972); *State v. Grady*, 548 S.W.2d 601, 608 (Mo.App.1977). Probable cause exists where the facts and circumstances within the police officers' knowledge, and of which they have reliable and trustworthy information, would warrant a person of reasonable caution to believe that the person being arrested had committed the offense. *State v. Moore*, 580 S.W.2d 747, 749 (Mo. banc 1979); *State v. Kimball*, 613 S.W.2d 932, 936 (Mo.App.1981). It is not required for probable cause that an informant be one whose reliability has previously been established; the true inquiry is whether the information is reliable and if it can be corroborated through other sources such that it reduces the chances of a "reckless or prevaricating tale," the information may form the basis of probable cause for an arrest. *State v. Moore, supra*, 580 S.W.2d at 749; *State v. Wiley*, 522 S.W.2d 281, 288 (Mo. banc 1975). An officer may act on information received so long as it describes the criminal activity in sufficient detail to distinguish the accusation from rumor and allows independent corroboration. *State v. Kent*, 535 S.W.2d 545, 549 (Mo.App.1976). *See also State v. Boyd*, 492 S.W.2d 787 (Mo.1973), *cert. denied*, 414 U.S. 1069, 94 S.Ct. 579, 38 L.Ed.2d 475 (1973).

▆▆ The visual information stated by the informant was substantially the same as that given the police by other eye witnesses. However, the informant purported to know who the three males were and their purpose in the shooting. He also overheard certain things said by appellant and Hill just before the shooting. The informant's description of the shooting was consistent with the other information received by the officers, and with the detail given, we believe a reasonable person could believe his account and act on it. The trial court found that probable cause existed for the arrest, and that the statement given was voluntary. We believe there was a sufficient basis for those findings. Point one is denied.

Appellant's second point states that the court erred in refusing to grant a mistrial when a police officer testified that he told

appellant the police had information that while appellant held Saunders he told Hill to shoot Saunders. Earlier an objection was made to the assistant circuit attorney asking the officer if he told appellant that he had information that appellant was holding Saunders and telling Hill to shoot him. At a bench conference the trial judge said that the form of the question was objectionable but that it was proper for the state "to bring out any inconsistency between what the police told him and the statement that the appellant made, because if there are inconsistencies that would tend to prove it was voluntary." The assistant circuit attorney then proceeded to question the witness as follows:

"Q Did you tell the Defendant that you had information about what happened to O'Neal Saunders?

A I did.

Q Okay. After you told him, did you tell him the contents of the information that you had?

A Yes, I did.

Q And after you told him that, is that when he related his participation?

A That's correct.

Q Okay. The participation that he related, was it exactly the same as the information you had received?

A It was not.

Q There are some parts that were different; is that correct?

A Yes.

Q Did you tell him that you had information that—

MS. BLACK: Objection; leading.

THE COURT: Well, I'm going to have to hear the question, and then I'll—then you object, Miss Black, and I'll rule. Didn't get far enough yet.

Q (By Mr. Rogers) Did you tell him that you had information that while he held O'Neal Saunders—"He" means the Defendant, Giles Chapman—He had said, "Shoot the mother fucker! Shoot the mother fucker!" Did you tell him that you had that information?

A I did.

Q Did he admit to saying that in his statement?

A No, he did not.

MS. BLACK: I assume my objection made at the bench is continuing throughout this questioning.

THE COURT: Well, I'm going to sustain the objection to that particular question, and ask that it be stricken.

What I was trying to indicate was that you show that some of the things that the Defendant himself said was inconsistent. Now, what you brought out, Mr. Rogers, is things the Defendant did not say that is inconsistent. I don't know how I could make my ruling any clearer. For example, the Defendant says his brother was not involved. Now, that is a positive statement by the Defendant. You may, if it—you know, inquire as to whether they told him his brother was involved.

That's the kind of thing that I was dealing with. Not the negative, not what is omitted, but what he actually said.

Do you understand that, Miss Black?

MR. ROGERS: Very Well.

THE COURT: I'm not indicating that is true.

MS. BLACK: I understand, but in connection with that I would have moved for a mistrial, because Mr. Rogers was able to get out that kind of hearsay, prejudicial information, from a non-existent person, as far as we are concerned.

THE COURT: Well, the motion for a mistrial will be denied, but the jury will be instructed to disregard the last question and the last response.

It's not evidence, and you must not consider it as evidence."

█ As no timely objection was made, we consider whether the question and answer complained of was plain error under Rule 30.20. The state does not contend that the question was proper but contends that the hearsay question and answer did not warrant a mistrial, especially in view of the trial court's admonition. The question obviously called for hearsay and if it and the answer were admitted in evidence it would appear to be prejudicial.

The judge's admonition was directed to the last question and last response, but it was the previous question and answer which put the hearsay before the jury. The judge and the lawyers may have considered that the judge's remarks were directed at the next to last question and answer but the jurors might not have understood which question and answer they were not to consider. One or more of the jurors may have determined that they could consider for its truth the information the police received that defendant told Hill to shoot Saunders. This would result in the admission of prejudicial hearsay which could have resulted in a miscarriage of justice. *See State v. Sykes*, 569 S.W.2d 258 (Mo.App.1978). *See also State v. Kirkland*, 471 S.W.2d 191 (Mo. 1971). The nature of the information and the language purportedly used by appellant would create a tendency for the question and answer to remain in the jurors' memory. We do not decide if a clear admonition not to consider the question and answer might have cured any prejudice created; we only hold that without such, the prejudice may have continued and resulted in a miscarriage of justice. Point two is ruled in favor of appellant.

After the case was submitted appellant filed a motion to consider an additional allegation of error, which motion was taken with the case. It concerns a matter which may not be an issue on retrial and therefore is denied.

The judgment is reversed and the cause is remanded for a new trial.

WELLIVER, P. J., and SEILER, J., concur.

HIGGINS, J., dissents in separate dissenting opinion filed.

HIGGINS, Judge, dissenting.

I am unable to find in this case the "manifest injustice or miscarriage of justice" necessary to relief under the plain error rule. *See* Rule 27.20, V.A.M.R.

The quoted record demonstrates that the court sustained the only objection made and instructed the jury not to consider the hearsay evidence in question. Such circumstances do not require the drastic remedy of a mistrial. *See State v. Wells*, 606 S.W.2d 777 (Mo.1980).

I would affirm the judgment.