Giles CHAPMAN, Movant-Appellant,

v.

STATE of Missouri,
Respondent-Respondent.

No. 50758.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 30, 1986.

Motion for Rehearing and/or Transfer
Denied Nov. 4, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Maria V. Perron, Asst. Public Defender, Clayton, Mo., for movant-appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for respondent-respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 27.26 motion without an evidentiary hearing. We affirm.

In 1980 movant pled guilty to second degree murder. After his motion to withdraw that plea was granted, he was convicted of first degree murder by a jury and sentenced to life imprisonment. That conviction was reversed by the Missouri Supreme Court in *State v. Chapman,* 627 S.W.2d 597 (Mo.1982), because of the erroneous admission of certain hearsay testimony. A different attorney represented movant at his second trial in 1982, which also resulted in his being convicted by a jury of first degree murder and sentenced to life imprisonment. Movant's subsequent appeal to this court was dismissed.

On May 7, 1985, movant filed a pro se 27.26 motion which was amended after the appointment of counsel. Upon examining the original plea of guilty, the transcript of both trials, and the supreme court's decision in *Chapman, supra,* the court denied movant's motion without an evidentiary hearing.

Movant's point on appeal is:

The circuit court erred in denying appellant's motion for post-conviction relief and his request for an evidentiary hearing pursuant to Missouri Supreme Court Rule 27.26 in that the evidence would have shown that trial counsel's performance did not conform to the degree of care and skill of a reasonably competent attorney under similar circumstances. Moreover, appellant and trial counsel had become embroiled in an irreconcilable conflict concerning the defense of his case.

In order to be entitled to an evidentiary hearing on a 27.26 motion, the movant must meet the requirements established in *Smith v. State,* 513 S.W.2d 407 (Mo. banc 1974). Those requirements are: (1) the motion must allege facts, not conclusions, warranting relief; (2) those facts must raise matters not refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant. *Kearns v. State,* 583 S.W.2d 748 (Mo.App.1979).

After examining the movant's motion and brief we are convinced that the only issue raised which could conceivably have entitled him to an evidentiary hearing was his claim that on several occasions he requested that Mr. Musich, his counsel at the second trial, present the same alibi defense utilized at his first trial, but Musich ignored movant's request and failed to present any alibi evidence.

At movant's first trial he, his father and one of his brothers testified in support of the alibi defense. Movant and his brothers lived with his father, and movant testified that he had been at home during most of the evening on which the murder occurred. The brother and father did not supply an absolute alibi for the defendant at the first trial; however, they supported movant's testimony in many respects.

In denying the motion to vacate, the court indicated that it had examined the plea of guilty as well as the transcript of both trials. The transcript of the second trial reveals that immediately prior to the beginning of that trial, the court ruled upon two of defendant's motions. At that time, defendant indicated that he would like to have different counsel appointed because there was a disagreement as to his defense. The judge told movant that "I am not going to discharge [counsel] but I will let him assist you and I will let you defend it in any way you want to, Mr. Chapman." After further discussion Mr. Musich said, "I am more than willing to withdraw as his attorney. I am more than willing to assist Mr. Chapman if he elects to proceed pro se. I will let him ask all the questions and I will just sit here and make the legal arguments, if that is what he wants."

The following exchange subsequently ensued:

THE COURT: Well, I don't think he wants to do that [proceed pro se]. I think he would rather have you than nobody. He just wants another lawyer, but I can't get him another lawyer.

Going to have to proceed with the one you got, but I said I will welcome anybody else if you want to bring them in here, any additional attorneys.

There was further discussion about the securing of another lawyer by movant's father, after which the court told movant:

[H]e can go talk to her, [the other attorney,] and if she will come in and help, Mike, I will welcome her.

That is up to your father, to go talk to her. Otherwise, I will have to proceed with the trial. I will leave Mike in the case, and *if you want to ask any questions or do anything, I will listen to you in the trial, too,* but we're going to have to proceed with the trial ...

THE DEFENDANT: See, I don't know if he has talked to my defense witnesses or not. He said he was going to call them for me, but I don't know if he has or not.

THE COURT: What witnesses?

THE DEFENDANT: My father and—he may not have endorsed them yet, but *I told him not to endorse them until I talked to him,* but I don't know if he just talked to them—

THE COURT: Who you talking about, your father?

THE DEFENDANT: Yes, sir.

THE COURT: Is your father sitting in the courtroom?

THE DEFENDANT: Yes, sir.

THE COURT: Well, he can talk to him right now. Anybody else?

THE DEFENDANT: My brother.

THE COURT: Where is your brother?

THE DEFENDANT: He probably at work, because he doesn't know what day he really has to come down here to testify.

THE COURT: Have you talked to his brother yet?

MR. MUSICH: I have not spoken with Al Chapman, the brother. I have spoken with Mr. Chapman's father on a number of occasions. First time I met Mr. Chapman, the father, David Chapman—testified at the last trial—I discussed with him his testimony, although very briefly, but I did discuss it with him. I do have the transcript. I have asked Giles Chapman a number of times whether he wished to go with the same defense. I advised him what I thought of that defense. He has answered my question. I have seen the transcript; I know what they testified to the first time. My discussion with them, I am sure, will be very brief to put them on the stand.

THE COURT: Well, did the brother testify at the other trial?

THE DEFENDANT: He—

MR. MUSICH: He did testify, and I have the transcript of that as well.

THE COURT: Well, of course, you know they are pretty well pinned down on their testimony. It can't be much different than that. Well, is that all the witnesses you gave him, him and your father?

THE DEFENDANT: Yes, and he knew from the transcript he would have to talk to them and see—

THE COURT: Well, he has a transcript, and he has already talked to your father, and he will talk to your brother before he puts him on the witness stand again; I am sure of that. It isn't going to start, his testimony, for a day or so.

The trial then proceeded with Mr. Musich representing movant, and the defense did not call any witnesses.

It is obvious from the record that defense counsel was prepared to go forward with the alibi defense and was willing to assist the defendant if he wanted to present the defense himself. Counsel indicated in the record that he had reservations about using an alibi defense, in light of his evaluation of the testimony of the defense witnesses at the previous trial and mov-

ant's confession. Nothing further appears relative to this issue in the transcript.

The motion court's denial of movant's motion without an evidentiary hearing was not clearly erroneous. Movant's contentions that he was forced to abandon his alibi defense and was denied the opportunity to testify are refuted by the portion of the record quoted above, and therefore he was not entitled to an evidentiary hearing on those allegations.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.